29 P.3d 746 (2001)
107 Wash.App. 972
STATE of Washington, Appellant,
v.
Michael F. KENNEDY, Respondent.
No. 26044-1-II.
Court of Appeals of Washington, Division 2.
August 24, 2001.
*747 William J. Halstead, Thurston County Deputy Pros. Atty., Olympia, for appellant.
Robert Mason Quillian, Thomas Doyle, Olympia, for respondent (court appointed).
SEINFELD, J.
The State appeals a trial court ruling granting Michael Kennedy's motion to suppress evidence obtained from his motel room. The police gained access by asking if they could come inside and talk about a complaint they had received concerning the room. Because the rule announced in State v. Ferrier, 136 Wash.2d 103, 960 P.2d 927 (1998), applies here and because the police failed to advise Kennedy of his right to refuse consent, we affirm.

FACTS
Following a CrR 3.6 hearing on Kennedy's motion to suppress, the trial court found that police officers Smith and Costello had received a complaint about a narcotics transaction in progress between the complainant's girlfriend and Kennedy at a local motel. The officers went to Kennedy's motel room where they listened for a short time to two voices, one male and one female, coming from inside. The officers heard a reference to a "razor" and to something being "smooth."
The officers then knocked and identified themselves as police officers, whereupon they heard the sound of drawers shutting. When Kennedy opened the door, the officers told him that they had received a complaint about the room and asked if they could come in to talk about it. Kennedy waved the officers in.
Once inside, the officers told Kennedy they had received a narcotics complaint involving his room. While Officer Smith spoke with Kennedy, Officer Costello noticed a plastic baggie with a white powder residue laying on top of a pile of clothes on a credenza. The baggie contained methamphetamine.
The State charged Kennedy with unlawful possession of a controlled substance with intent to deliver, RCW 69.50.401(a)(1)(ii). But the trial court granted Kennedy's motion to suppress evidence obtained from the police entry into the motel room and thereby terminated the case. The trial court ruled that Kennedy's apparent consent to the entry was not voluntary because the police had not advised him of his right to refuse consent.
On appeal, the State challenges the suppression ruling, contending that this advisement was not necessary because the police were merely investigating a complaint not seeking consent to search.

ANALYSIS
The State concedes that Kennedy had the same expectation of privacy in his motel room as he would in his private residence. See State v. Davis, 86 Wash.App. 414, 419, 937 P.2d 1110 (1997). But it argues that the police did not employ a traditional "knock and talk" procedure in this case and, thus, the trial court erred in applying Ferrier. Because this involves an issue of law, our review is de novo. State v. Johnson, 128 Wash.2d 431, 443, 909 P.2d 293 (1996).
In Ferrier, the Supreme Court adopted the following rule:
[W]hen police officers conduct a knock and talk for the purpose of obtaining consent to search a home, and thereby avoid the necessity of obtaining a warrant, they must, prior to entering the home, inform the person from whom consent is sought that he or she may lawfully refuse to consent to the search and that they can revoke, at any time, the consent that they give, and can limit the scope of the consent to certain areas of the home. The failure to provide these warnings, prior to entering the home, vitiates any consent given thereafter.

136 Wash.2d at 118-19, 960 P.2d 927 (emphasis added).
The police in Ferrier had received information that Ferrier was operating a marijuana grow in her home. 136 Wash.2d at 106, 960 P.2d 927. After confirming some of the informant's information, the police decided to conduct a "knock and talk" procedure because they did not think they could get a search warrant without revealing the informant's *748 name. Ferrier, 136 Wash.2d at 106-07, 960 P.2d 927. One officer described a "knock and talk" as a procedure
like any other follow-up investigation that a detective or police officer would do. You go to the door, knock on the door, make contact with the resident, ask if you can come in to talk about whatever the complaint happens to be....
Once you're inside, you talk about why you're there and you ask for permission to search the premises.
Ferrier, 136 Wash.2d at 107, 960 P.2d 927.
The police went to Ferrier's home, knocked on her door, and identified themselves. Ferrier, 136 Wash.2d at 107, 960 P.2d 927. Once inside, the officers told Ferrier that they had information about a marijuana grow operation in her home and asked for and received her consent to search the home; they did not tell her that she had the right to refuse consent. Ferrier, 136 Wash.2d at 108, 960 P.2d 927. The Ferrier court held that a police entry without providing this information violates the Washington State Constitution's protection of the right to privacy in one's home, thus vitiating any consent. 136 Wash.2d at 114-15, 960 P.2d 927 (citing Wash. Const. art. I, § 7). The court noted that it was significant to its holding that Ferrier was in her home when the police initiated contact and that the officers "admitted that they conducted the knock and talk in order to avoid the necessity of obtaining a search warrant authorizing a search of the home." Ferrier, 136 Wash.2d at 115, 960 P.2d 927. The Ferrier rule applies only where officers employ a "knock and talk" procedure; the rule is not applicable where officers have an arrest or search warrant or in good faith believe they do. State v. Johnson, 104 Wash.App. 489, 505-06, 17 P.3d 3 (2001); State v. Johnson, 104 Wash.App. 409, 421, 16 P.3d 680 (2001).
Thus, in State v. Bustamante-Davila, 138 Wash.2d 964, 966-67, 983 P.2d 590 (1999), the court found Ferrier inapplicable where local law enforcement officers accompanied an Immigration and Naturalization Service (INS) agent to the defendant's home to arrest him under a removal order issued by an immigration judge. When the defendant allowed both the INS agent and the local officers into his home, they noticed a rifle in plain view. Bustamante-Davila, 138 Wash.2d at 968-69, 983 P.2d 590. The State then charged him with unlawful possession of a firearm. Bustamante-Davila, 138 Wash.2d at 970, 983 P.2d 590.
The Supreme Court affirmed the denial of the defendant's suppression motion and limited Ferrier to situations where
not having obtained a search warrant, police officers proceed to premises where they believe contraband will be found. Once there they knock on the door and talk with the resident, asking if they may enter. After being allowed to enter, the officers then explain why they are there, that they have no search warrant, and ask permission to search the premises.
Bustamante-Davila, 138 Wash.2d at 976-77, 983 P.2d 590 (footnotes omitted). As the law enforcement officers in Bustamante-Davila were not looking for contrabandthey merely accompanied the INS agent as backupthe Ferrier rule did not apply. Bustamante-Davila, 138 Wash.2d at 980, 984, 983 P.2d 590. See also State v. Leupp, 96 Wash.App. 324, 326, 333-34, 980 P.2d 765 (1999) (Ferrier rule did not apply where officer responded to 911 "hang-up" call and obtained permission to enter residence believing someone might be injured inside), review denied, 139 Wash.2d 1018, 994 P.2d 849 (2000).
The Supreme Court again distinguished Ferrier in State v. Williams, 142 Wash.2d 17, 19, 11 P.3d 714 (2000), where officers went to a residence to execute an arrest warrant for Williams after a citizen told the police where Williams was currently located. The Williams court applied Bustamante-Davila, noting that it limited "the requirement of a warning to situations where police seek to conduct a search for contraband or evidence of a crime without obtaining a search warrant." Williams, 142 Wash.2d at 28, 11 P.3d 714.
The State contends that Williams, Bustamante-Davila, and Leupp govern the analysis here. It argues that the officers did not approach Kennedy's room with the intent to *749 search for contraband without a search warrant.
The Ferrier rule is applicable to the facts of this case. The sole reason for the officers visit to Kennedy's motel room was to investigate a narcotics complaint; there was no arrest warrant or 911 emergency. One of the officers testified: "[W]e decided to go knockgo up to [the room] and knock on the door and investigate the narcotics complaint." Report of Proceedings at 16. The officers did not believe they had probable cause to support a search warrant when they knocked on Kennedy's door, and they stated that they would "probably" have asked to search his room once inside.
The State's attempt to distinguish receiving consent to enter from consent to search is not persuasive. In Ferrier, as a first step, the police sought to gain access to the interior of Ferrier's home where they could see what was in plain view and then decide whether to conduct a further search. But the purpose of the Ferrier rule is to mitigate the inherently coercive nature of this type of police procedure and to ensure that the "home dweller who consents to a warrantless search possessed the knowledge necessary to make an informed decision."[1] 136 Wash.2d at 116, 960 P.2d 927. Requiring the police to inform the resident of his right to refuse consent before they enter the home promotes this purpose. Ferrier, 136 Wash.2d at 118-19, 960 P.2d 927. Thus, the officers' request for permission to enter is, in effect, a request for permission to "search" for anything in plain view.
Because the Ferrier rule applies here, the officers were required to inform Kennedy of his right to deny consent. As they failed to do so, the trial court did not err in granting Kennedy's suppression motion.
We affirm.
HUNT, A.C.J., concurs.
QUINN-BRINTNALL, J. (dissenting).
The defendant, Kennedy, characterized this case as a "knock and talk" controlled by State v. Ferrier, 136 Wash.2d 103, 960 P.2d 927 (1998). The trial court and the majority of this court have agreed. Because the "knock and talk" procedure in Ferrier is wholly inapposite to the investigation of the reported drug sale in progress and the seizure of drugs left in plain view in this case, I respectfully dissent.
A "knock and talk" is a procedure in which police with a generalized suspicion of criminal activity not amounting to probable cause gain entry to a residence to talk and later request consent to search the home. The officers' use of the "knock and talk" procedure in Ferrier was recently described by our Supreme Court as follows:
Four officers, equipped in black raid jackets, approached Debra Ferrier's home and asked permission to enter. Once inside, the officers observed two infant children and explained to Ferrier that they learned of a marijuana growing operation in her house and that they would like to search the house for marijuana. They then asked for consent to search the home and had her sign a consent form. Ferrier testified that she was never informed of her right to refuse a search nor advised of her Miranda rights, and that she consented only after the officers told her that they would take her grandchildren away to Child Protective Services.
State v. Williams, 142 Wash.2d 17, 25-26, 11 P.3d 714 (2000) (citations omitted).
In Ferrier, our Supreme Court ruled that to ensure Washington citizens' rights to privacy under section 7, Article I of our State Constitution, officers must specifically advise *750 these individuals of their right to refuse consent to a warrantless search.[2] 136 Wash.2d at 118-19, 960 P.2d 927 (emphasis added).
Our Supreme Court has twice declined to extend Ferrier beyond the "knock and talk" circumstances:
We recently limited Ferrier to the kind of coercive searches the police employed there. We rejected the contention that Ferrier was a "bright-line" rule required in every case where police obtain search authority by consent. Rather, "[t]his Court limited its holding in Ferrier to employment of a `knock and talk' procedure."
Williams, 142 Wash.2d 17, 26, 11 P.3d 714 (2000) (quoting State v. Bustamante-Davila, 138 Wash.2d 964, 980, 983 P.2d 590 (1999)).
Most often police conduct a "knock and talk" when they have uncorroborated reports of continuous criminal activity (i.e. a marijuana grow operation or repeated drug sales) from a source of questionable reliability. In Ferrier, police had an uncorroborated report of a marijuana grow operation from Ferrier's son, a confidential source of unknown reliability who had a possible motive to lie. The marijuana was not in plain view but was locked in an upstairs closet.
Kennedy's case starkly differs. Police had specific information from an identified individual known to them that a drug purchase was in progress.
Mr. Jacobs advised that he was domestic partner with Ms. Becky Spence, that Ms. Spence had been "doing a lot of meth" and that Ms. Spence was currently at the Carriage Inn Motel with the Defendant for the purpose of conducting a drug transaction.
Finding of Fact No. 3.
The trial court found the police had a reasonable suspicion, short of probable cause, to believe that the defendant and Spence were in the process of an illegal drug transaction. And, unlike the uncorroborated report in Ferrier, Jacobs' report was subsequently corroborated by the police: First, the manager of the Carriage Inn confirmed that the defendant was in fact registered at the inn in room 227. Second, police heard a conversation between a male and a female coming from inside room 227. Third, the two voices were using terms consistent with several scenarios, including the drug transaction they had been told was in progress. See State v. Kennedy, 107 Wash.2d 1, 6, 726 P.2d 445 (1986) (holding that when a suspect's actions are consistent with criminal activity, although also consistent with noncriminal activity, it may justify a brief detention (Terry stop)); State v. Samsel, 39 Wash.App. 564, 570-71, 694 P.2d 670 (1985) (explaining that while an inchoate hunch is insufficient to justify a stop, apparently innocuous circumstances may appear incriminating to officers in light of past experience, which experienced officers are not required to ignore).
In Kennedy's case, the officers knocked on the door and identified themselves as police. Kennedy opened the door and the two uniformed officers followed him into the interior of the motel room where a baggie of white powder was found in plain view. Unlike Ferrier, the officers never conducted a search.
Likewise, in Bustamante-Davila, police officers accompanied an Immigration and Naturalization Service agent serving a deportation order on the defendant at the defendant's home where they observed contraband in plain view. The court observed that
the officers "merely accompanied the INS agent as backup, a standard practice in INS arrest and deportation matters." At the defendant's door, the defendant consented to entry into his home, where eventually the INS agent and police officers spotted an illegally held rifle in plain view.

*751 The court found that "Petitioner did not consent to a search, but consented to entry into his home...."
Williams, 142 Wash.2d at 26-27, 11 P.3d 714 (citations omitted).
In Williams, too, the police did not conduct a search, but rather entered the home of a third party (Jelinek) to execute an arrest warrant on the defendant:
[T]he police officers did not seek to enter Jelinek's apartment to look for contraband or to arbitrarily search a home for a hidden guest. The officers in this case first verified the accuracy of an informant's statement and identified the defendant's vehicle in front of Jelinek's apartment, which allowed the officers to reasonably conclude that Williams was inside. Subsequently, when the officers spoke with Jelinek, the officers did not request permission to search the premises but only asked whether the defendant was inside. Jelinek told the officers that there was a guest in his home and that he knew the guest by another name. He agreed to allow the police officers to come inside and confirm the identities of the persons inside. Considering the limited purpose of the police entry and that Jelinek acknowledged that he had guests inside, this case does not resemble a "knock and talk" warrantless search that Ferrier intended to prevent.
Williams, 142 Wash.2d at 27, 11 P.3d 714.
Contrary to the majority's holding in this case, Williams expressly held that there is no
constitutional requirement that a police officer read a warning each time the officer enters a home to exercise [an] investigative duty. To apply the Ferrier rule in these situations would unnecessarily hamper a police officer's ability to investigate complaints and assist the citizenry. Instead, we limit the requirement of a warning to situations where police seek to conduct a search for contraband or evidence of a crime without obtaining a search warrant.
Williams, 142 Wash.2d at 27-28, 11 P.3d 714.
As both Williams and Bustamante-Davila demonstrate, Ferrier warnings are not required when police with a reasonable suspicion not amounting to probable cause are investigating a report of a crime in progress. Such contacts are more similar to "Terry stops" than "knock and talks" and should be analyzed as such. See, e.g., State v. O'Neill, 104 Wash.App. 850, 866, 17 P.3d 682 (2001) (holding Terry stop of vehicle lawful; therefore "narcotics" spoon containing a granular substance in plain view on the car's floorboard properly seized); State v. Watkins, 76 Wash.App. 726, 731, 887 P.2d 492 (1995) (holding Terry stop lawful; therefore gun that became visible when suspect opened car door was properly seized pursuant to the plain view exception).
Once lawfully inside Kennedy's motel room to discuss Jacob's allegations, the officers had a right to see what was there to be seen and a duty to seize evidence or contraband in plain view. O'Neill, 104 Wash.App. at 861, 17 P.3d 682; Bustamante-Davila, 138 Wash.2d at 982, 983 P.2d 590; State v. Myers, 117 Wash.2d 332, 815 P.2d 761 (1991).
In my opinion, the majority unnecessarily extends Ferrier far beyond the limits set by the Supreme Court in Bustamante-Davila and Williams and improperly requires the giving of Ferrier warnings when police are investigating a report of a crime in progress.[3] Therefore, I dissent.
NOTES
[1] The Ferrier court noted that:

Central to our holding is our belief that any knock and talk is inherently coercive to some degree. While not every knock and talk effort may be accompanied by as great a show of force as was present here, we believe that the great majority of home dwellers confronted by police officers on their doorstep or in their home would not question the absence of a search warrant because they either (1) would not know that a warrant is required; (2) would feel inhibited from requesting its production, even if they knew of the warrant requirement; or (3) would simply be too stunned by the circumstances to make a reasoned decision about whether or not to consent to a warrantless search.
136 Wn.2d at 115, 960 P.2d 927.
[2] Specifically, the court held that

article I, section 7 is violated whenever the [authorities] fail to inform home dwellers of their right to refuse consent to a warrantless search.... [W]hen police officers conduct a knock and talk for the purpose of obtaining consent to search a home, and thereby avoid the necessity of obtaining a warrant, they must, prior to entering the home, inform the person from whom consent is sought that he or she may lawfully refuse to consent to the search and that they can revoke, at any time, the consent that they give, and can limit the scope of the consent to certain areas of the home.
Ferrier, 136 Wash.2d at 118, 960 P.2d 927 (emphasis added).
[3] By "crime in progress," I mean a crime of limited duration. For example, the sale of marijuana by A to B in progress, not a series of sales of marijuana by A to unidentified persons or a continuous crime like growing marijuana.