[No. 72412-1. En Banc.]
Argued January 22, 2003. Decided June 5, 2003.

THE STATE OF WASHINGTON, *Respondent*, v. VIENGMONE KHOUNVICHAI, *Petitioner*.

558

*Eric J. Nielsen* (of *Nielsen, Broman & Koch, P.L.L.C.*), for petitioner.

*Norm Maleng, Prosecuting Attorney*, and *Randi J. Austell, Deputy*, for respondent.

MADSEN, J. — In *State v. Ferrier*, we adopted the rule that when police officers seek entry into a home for the purpose of obtaining consent to a warrantless search of the home, they must, prior to entering, inform the person from whom consent is sought of the right to refuse consent to the search and of the right to limit the scope of the search. *State v. Ferrier*, 136 Wn.2d 103, 118, 960 P.2d 927 (1998). We granted review to determine whether the police must administer *Ferrier* warnings when seeking entry into a home to question a resident in the course of investigating a crime.

We hold that the *Ferrier* warnings are not required in this situation and reiterate that these warnings are required only when police officers seek entry to conduct a consensual search for contraband or evidence of a crime. We affirm the Court of Appeals.

## FACTS

On the night of January 30, 2000, two police officers were called to respond to a malicious mischief report. The complainant told the officers that a man named McBaine had been at her home and, shortly after he left, an object broke her window.

The officers proceeded to the address given by the complainant to question McBaine about the incident. They did not have probable cause to arrest McBaine but considered him a suspect. The officers knocked on the apartment door, and an occupant, Elizabeth Orr, answered. Officer Penwell asked Ms. Orr if McBaine was home and stated that she wanted to talk to him about the incident. Ms. Orr told the officer that McBaine was her grandson and that he was home, and she asked if he was in trouble. Officer Penwell told her that they just wanted to talk to him and requested entry. Ms. Orr replied "oh, yes" and waved the two officers inside.

Upon entry, the officers noticed a man lying on the couch in the living room. For safety, Officer Penwell remained

near the entry while Officer Bowman followed Ms. Orr down a hallway toward a closed bedroom door. Ms. Orr knocked and called, "there is someone here to see you." When the door opened, the officer smelled marijuana. McBaine stepped out of the room and upon seeing the officers, turned and whispered something to two individuals in the room, one of whom was the petitioner, Viengmone Khounvichai. Khounvichai made a sudden dash across the room and out of the officers' sight.

Concerned that Khounvichai was going for a weapon, Officer Bowman ran into the bedroom where he saw Khounvichai reaching into a closet. The officer demanded that Khounvichai show his hands. When he failed to comply, the officer grabbed at his right hand. During the struggle that ensued, a baggie of white powder, later determined to be cocaine, fell out of Khounvichai's hand. The officers arrested Khounvichai. They also questioned McBaine about the malicious mischief incident.

The State charged Khounvichai in juvenile court with one count of possession of cocaine under RCW 69.50.401(d). At trial, Khounvichai moved to suppress the cocaine, arguing that Ms. Orr's consent was invalid under *State v. Ferrier* because she had not been warned of her right to refuse entry. He also argued that, assuming consent was valid, police exceeded the scope of that consent. The juvenile court denied the motion and found Khounvichai guilty at the conclusion of the fact finding hearing.

The Court of Appeals affirmed, holding that *Ferrier* warnings were not required, that Ms. Orr gave voluntary consent for the police entry, and that the police did not exceed the scope of Ms. Orr's consent. *State v. Khounvichai*, 110 Wn. App. 722, 42 P.3d 1000 (2002). Khounvichai sought review in this court on the sole question of whether Ms. Orr's consent to police entry was voluntary in the absence of *Ferrier* warnings.

We granted Khounvichai's petition for review.

## ANALYSIS

Khounvichai takes exception to the Court of Appeals decision, which held that police were not required to give *Ferrier* warnings in this case because the officers sought consensual entry into Ms. Orr's home for the purpose of speaking to her grandson and not for the purpose of conducting a warrantless search. *Khounvichai*, 110 Wn. App. at 728. He contends that police officers must advise a home dweller of the *Ferrier* warnings when requesting entry into a home to speak to a resident as part of a criminal investigation because a request for entry is a request to search—the officers may obtain a confession from the resident or discover evidence of a crime or contraband through a plain view discovery.

In *State v. Ferrier*, this court considered the constitutional implications of a police procedure described as a "knock and talk." The technique was employed by police to gain entry into a defendant's home for the purpose of obtaining consent to conduct a warrantless search. *Ferrier*, 136 Wn.2d at 107. Quoting police testimony, *Ferrier* explained the nature of a "knock and talk":

> "You go to the door, knock on the door, make contact with the resident, ask if you can come in to talk about whatever the complaint happens to be . . . .
>
> "Once you're inside, you talk about why you're there and you ask for permission to search the premises."

*Id.* at 107.

In *Ferrier*, the police had uncorroborated information that Debra Ferrier was conducting a marijuana grow operation in her home. *Id.* at 106. Lacking the probable cause necessary to obtain a search warrant, officers admitted that they conducted a "knock and talk" in order to avoid the necessity of obtaining a warrant. *Id.* at 107. Dressed in black raid jackets, four officers proceeded to Ferrier's home and asked for her permission to enter. *Id.* Once inside, they informed Ferrier of their suspicions and asked for her

consent to search the home and seize the marijuana. *Id.* at 108. The officers asked Ferrier to sign a "consent to search" form but did not advise Ferrier of her right to refuse to consent or of her rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). *Ferrier*, 136 Wn.2d at 108.

We concluded that the "knock and talk" conducted under those circumstances violated Ferrier's state constitutional right to privacy in her home. *Id.* at 115. Article I, section 7 of the Washington Constitution provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." CONST. art. I, § 7. The right to privacy includes the right to be free from warrantless searches, which are "unreasonable per se." *State v. Hendrickson*, 129 Wn.2d 61, 70, 917 P.2d 563 (1996). Consent, however, is one of the narrow exceptions to the search warrant requirement, and the State bears the burden of establishing the exception. *Id.* at 71.

While voluntary consent is an exception to the warrant requirement, we also recognized in *Ferrier* that to some degree it is inherently coercive whenever a police officer requests consent to search a home without a warrant:

> [W]e believe that the great majority of home dwellers confronted by police officers on their doorstep or in their home would not question the absence of a search warrant because they either (1) would not know that a warrant is required; (2) would feel inhibited from requesting its production, even if they knew of the warrant requirement; or (3) would simply be too stunned by the circumstances to make a reasoned decision about whether or not to consent to a warrantless search.

*Ferrier*, 136 Wn.2d at 115. Moreover, "like a search warrant, a search resulting from a knock and talk need not be supported by probable cause, or even reasonable suspicion." *Id.* at 118.

We noted that the only way to protect the right against warrantless searches of the home is to require police to inform citizens of their right to refuse consent. *Id.* at 116. "If we were to reach any other conclusion, we would

not be satisfied that a home dweller who consents to a warrantless search possessed the knowledge necessary to make an informed decision. That being the case, the State would be unable to meet its burden of proving that a knowing and voluntary waiver occurred." *Id.* at 116-17. Accordingly, we held that "article I, section 7 is violated whenever the authorities fail to inform home dwellers of their right to refuse consent to a warrantless search." *Id.* at 118. Thus:

> [W]hen police officers conduct a knock and talk *for the purpose of obtaining consent to search a home, and thereby avoid the necessity of obtaining a warrant*, they must, prior to entering the home, inform the person from whom consent is sought that he or she may lawfully refuse to consent to the search and that they can revoke, at any time, the consent that they give, and can limit the scope of the consent to certain areas of the home. The failure to provide these warnings, prior to entering the home, vitiates any consent given thereafter.

*Id.* at 118-19 (emphasis added).

We have since clarified that the *Ferrier* requirement is limited to situations where police request entry into a home for the purpose of obtaining consent to conduct a warrantless search and have declined to broaden the rule to apply outside the context of a request to search. *See State v. Williams*, 142 Wn.2d 17, 28, 11 P.3d 714 (2000) (*Ferrier* warnings not required where police request consent to enter a home to arrest visitor pursuant to a valid arrest warrant); *State v. Bustamante-Davila*, 138 Wn.2d 964, 981, 983 P.2d 590 (1999) (*Ferrier* warnings not required where police and agent of Immigration and Naturalization Service gained consensual entry into defendant's home to serve a presumptively valid deportation order).

In *Williams*, we noted that police often enter homes for investigative purposes, such as inspecting break-ins, vandalism, and other routine responses. 142 Wn.2d at 27. We found no constitutional requirement that officers warn of the right to refuse entry every time an officer enters a home to investigate because "[t]o apply the *Ferrier* rule in these

situations would unnecessarily hamper a police officer's ability to investigate complaints and assist the citizenry." *Id.* at 27-28.

Moreover, as the State correctly contends, there is a fundamental difference between requesting consent to search a home and requesting consent to enter a home for other legitimate investigatory purposes. When police obtain consent to search a home pursuant to a "knock and talk" they go through private belongings and affairs without restriction. Such an intrusion into privacy is not present, however, when the police seek consensual entry to question a resident. Furthermore, the requirements of *Miranda*, 384 U.S. at 478-79, already serve to protect citizens from coercive questioning.

We adopted the *Ferrier* rule out of a concern that citizens may be unaware that a warrant to search is required or, if aware, may be too intimidated by an officer's presence in the home to deny consent to a warrantless search. As the State correctly emphasizes, the *Ferrier* warnings target searches and not merely contacts between the police and individuals. In sum, when police seek to conduct a warrantless search of the home, the *Ferrier* warnings achieve their purpose; when police officers seek entry to question a resident, the home is merely incidental to the purpose.

Khounvichai also urges that *Ferrier* applies in this case because a police officer's request to enter a home to talk to an occupant about an alleged offense has the same result as a request to enter to search—a warrantless "search" for anything in plain view. Khounvichai relies on *State v. Kennedy* to support his contention. 107 Wn. App. 972, 977, 29 P.3d 746 (2001).

In *Kennedy*, police officers received a complaint that a narcotics transaction was in progress in a local motel room. *Id.* at 973. Police officers went to the room and heard sounds consistent with drug activity. *Id.* When the officers knocked on the door, Kennedy answered. The police identified themselves, explained that they had received a complaint about the room, and requested permission to enter. *Id.* Kennedy

consented to their entry. Once inside, the officers saw contraband in plain view. *Id.*

The court held that *Ferrier* warnings were required given that "the sole reason for the officers['] visit . . . was to investigate a narcotics complaint" currently occurring in the room. *Id.* at 977. The officers testified that they did not believe that they had probable cause to support a search warrant and that they "probably" would have asked for consent to search the room once they entered. *Id.* The court reasoned that receiving consent to enter a residence is indistinguishable from receiving consent to search because a request for permission to enter is, in effect, "a request for permission to 'search' for anything in plain view." *Id.*

In this case, the Court of Appeals distinguished *Kennedy* on its facts, noting that it did not read the decision as requiring *Ferrier* warnings whenever the police enter a home to question a resident as part of a legitimate investigation. *Khounvichai*, 110 Wn. App. at 729. While *Kennedy* may be distinguishable, the court's reasoning is troubling and must be addressed.

It is well established that a discovery made in plain view is not a search. Article I, section 7 "[does] not prohibit a seizure without a warrant, where there is no need of a search, and where contraband subject-matter or unlawful possession of it is fully disclosed and open to the eye and hand." *State v. Miller*, 121 Wash. 153, 154, 209 P. 9 (1922); *see also* 12 ROYCE C. FERGUSON, WASHINGTON PRACTICE, CRIMINAL PRACTICE AND PROCEDURE § 2404 (2d ed. 1997) ("Every observation by a law enforcement officer does not necessarily amount to a search within the meaning of the Fourth Amendment. The police may take note of anything that is evident to the senses, as long as they are in a place where they have the right to be."). The plain view discovery of evidence does not violate article I, section 7 if the police officer has a prior justification for the intrusion and the officer immediately recognizes that he has evidence before him. *State v. O'Neill*, 148 Wn.2d 564, 570, 62 P.3d 489 (2003); *State v. Hudson*, 124 Wn.2d 107, 114, 874 P.2d 160

(1994). Thus, if an officer observes evidence of a crime or contraband in plain view, he has not conducted a search. Khounvichai's reliance on *Kennedy* to support his position that every entry potentially involves a plain view "search" is unavailing.

Lastly, Khounvichai argues that public policy is advanced by applying the *Ferrier* rule whenever a police officer requests entry into a home to speak to a resident in the course of a criminal investigation. He points out that circumstances may change after the officer enters, but the officer will be precluded from requesting consent to search because he failed to give the *Ferrier* warnings prior to entry.

Khounvichai's argument is not persuasive. As noted earlier, warrantless searches are per se unreasonable. If an officer fails to warn prior to entering, but once inside desires to search, he must first obtain a search warrant. Of course, no warrant is required if another exception to the warrant requirement justifies a warrantless search.

## CONCLUSION

The *Ferrier* rule applies to situations where police seek entry to a home to conduct a warrantless search for contraband or evidence of a crime. *Williams*, 142 Wn.2d at 27-28. As this court stated in *Williams*, "[w]e do not find it prudent or necessary to extend *Ferrier* to require that police advise citizens of their right to refuse entry every time a police officer enters their home." *Id.* at 27. Likewise, we do not find it prudent or necessary to require that police officers warn citizens of the right to refuse consent to search when they request entry into a home merely to question or gain information from an occupant. Such an extension of *Ferrier* does not further the constitutional reasons for the warnings and may unnecessarily frustrate police investigations.

In this case, the police sought entry into Ms. Orr's home in order to speak to her grandson about breaking a window. *Ferrier* warnings were not required because the officers did

not enter for the purpose of obtaining consent to a warrant-less search. The Court of Appeals is affirmed.

ALEXANDER, C.J., and IRELAND, BRIDGE, CHAMBERS, OWENS, and FAIRHURST, JJ., concur.

SANDERS, J. (dissenting) — Let us return to first principles. Article I, section 7 of the Washington Constitution states, "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." At issue here is Mr. Khounvichai's right not to be disturbed in his private affairs and Ms. Orr's right not to have her home invaded.

Only when officers of the law have a warrant or when there are exigent circumstances or when there is another narrow exception to the warrant requirement are police officers vested with the authority of law requisite to enter a private residence.[1] *See State v. Ladson*, 138 Wn.2d 343, 350, 979 P.2d 833 (1999). Consent to enter a dwelling is a narrowly drawn exception to the warrant requirement and the burden is on the State to prove that consent. *State v. Ferrier*, 136 Wn.2d 103, 111, 960 P.2d 927 (1998) (citing *State v. Hendrickson*, 129 Wn.2d 61, 72, 917 P.2d 563 (1996)). In *Ferrier* we concluded that an essential element of consent is knowledge of the right to refuse consent. *Id.* at 116 (citing *State v. Johnson*, 68 N.J. 349, 346 A.2d 66, 68 (1975)). *Ferrier* warnings provide people with this knowledge.

Unlike the majority, our state constitution does not distinguish between warrantless invasion of a home or interference with personal affairs based upon the subjective intent of police officers. But the majority argues *Ferrier*

---

[1] "The warrant requirement is especially important under article I, section 7, of the Washington Constitution as it is the warrant which provides the 'authority of law' referenced therein." *State v. Ladson*, 138 Wn.2d 343, 350, 979 P.2d 833 (1999) (citing *City of Seattle v. Mesiani*, 110 Wn.2d 454, 457, 755 P.2d 775 (1988)). The exceptions to the warrant requirements are " ' "jealously and carefully drawn" ' " and not to be expanded upon lightly. *Id.* at 349 (quoting *State v. Hendrickson*, 129 Wn.2d 61, 70, 917 P.2d 563 (1996) (quoting *State v. Houser*, 95 Wn.2d 143, 149, 622 P.2d 1218 (1980))).

warnings apply only when police officers intend to search a residence rather than simply invade it. "[T]here is a fundamental difference between requesting consent to search a home and requesting consent to enter a home for other legitimate investigatory purposes." Majority at 564. Thus, claims the majority, when police officers seek warrantless access to a residence, *Ferrier* warnings are not required if the police officers later testify that there was no intent to search. This distinction is quite arbitrary as it cannot be based on language in the constitutional text which pertains to "invasion" of the home without regard to the activity that may be undertaken after the threshold is crossed.

The United States Supreme Court has held that application of the Fourth Amendment does not turn on the subjective intent of law enforcement officers. *Bond v. United States*, 529 U.S. 334, 339 n.2, 120 S. Ct. 1462, 146 L. Ed. 2d 365 (2000); *Whren v. United States*, 517 U.S. 806, 813, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996) (stating that "we have been unwilling to entertain Fourth Amendment challenges based on the actual motivations of individual officers"); *California v. Ciraolo,* 476 U.S. 207, 212, 106 S. Ct. 1809, 90 L. Ed. 2d 210 (1986) (rejecting respondent's challenge to "the authority of government to observe his activity from any vantage point or place if the viewing is motivated by a law enforcement purpose, and not the result of a casual, accidental observation"). Nor can I discern any principled reason why this court should judge a warrantless search of a home based on the subjective intention of police officers. I posit that the subjective intent of an individual cannot substitute for the authority of law referenced in article I, section 7.

The purpose of article I, section 7 is to limit invasion of privacy to those invasions with authority of law. The purpose of *Ferrier* is to protect individuals against the inherently coercive nature of a police officer's request to enter a residence under the limited consent exception to the warrant requirement. *Ferrier*, 136 Wn.2d at 118. The reasons for adopting *Ferrier* were quoted by the majority and because of their importance I reiterate them:

[W]e believe that the great majority of home dwellers confronted by police officers on their doorstep or in their home would not question the absence of a search warrant because they either (1) would not know that a warrant is required; (2) would feel inhibited from requesting its production, even if they knew of the warrant requirement; or (3) would simply be too stunned by the circumstances to make a reasoned decision about whether or not to consent to a warrantless search.

*Ferrier*, 136 Wn.2d at 115. The *Ferrier* court also pointed out, "[c]entral to our holding is our belief that any knock and talk is inherently coercive to some degree." *Id.* The intent of *Ferrier* was to protect against coercion, not to parse the subjective intent of police officers.

This court revisited *Ferrier* in the context of federal agents who in good faith believed they were authorized to make an arrest pursuant to an Immigration and Naturalization Service deportation order. *State v. Bustamante-Davila*, 138 Wn.2d 964, 983 P.2d 590 (1999). In *Bustamante-Davila* we reasoned that because police officers and federal agents sought entry to make an arrest, it was not necessary to provide *Ferrier* warnings. *Id.* at 983-84. But with Mr. Khounvichai the police officers had no order, arrest warrant, or other authority of law directing officers to take him into custody.

In *Williams* a warrant was issued for Williams's arrest and police officers were told by an informant where Williams was staying. *State v. Williams*, 142 Wn.2d 17, 19, 11 P.3d 714 (2000). Upon informing the tenant that they had a warrant for Williams's arrest, the police officers were granted permission to enter the apartment. *Id.* at 20. This court held that Williams lacked standing to claim an unconstitutional search. *Id.* at 23. The opinion then added in dicta that even if standing were present, possession of an arrest warrant provided the necessary authority of law to enter the dwelling. *Id.* at 23-24. *Ferrier* warnings were not necessary.

In both *Williams* and *Bustamante-Davila* police officers sought entry to a residence to arrest an occupant pursuant

to an order or warrant. The United States Supreme Court has held that an arrest warrant "authorizes a limited invasion of that person's privacy interest when it is necessary to arrest him in his home." *Steagald v. United States*, 451 U.S. 204, 214 n.7, 101 S. Ct. 1642, 68 L. Ed. 2d 38 (1981). The officers in *Williams* and *Bustamante-Davila* had a legal duty to be at the residence. In contrast, the police officers in *Ferrier* and here had no search warrant or arrest warrant. *Ferrier*, 136 Wn.2d at 107; majority at 559. Thus there was simply no authority of law to enter Ms. Orr's residence. Rather police officers went to Ms. Orr's residence as the result of an investigatory hunch that did not meet probable cause. Absent authority of law, informed consent is necessary to invade Ms. Orr's home.

To reach this result we would not have to overrule *Williams* because the exceptions to *Ferrier* identified in *Williams* are not present here. Those exceptions involve circumstances where police officers are either explicitly or implicitly invited because they are involved in "routine responses," such as investigating a break-in, vandalism, or other crime against the home dweller. *Williams*, 142 Wn.2d at 27. In a "routine response," police are responding to either a direct request or an indirect request for their presence or assistance. Under these circumstances police are explicitly or implicitly invited into a home and true consent is more readily apparent. However when police officers arrive on their own initiative there is no invitation for them to enter the premises. In that case they should either (1) ask their questions at the door, or (2) give *Ferrier* warnings to assure consent is informed and therefore voluntary prior to entering the residence, or (3) obtain a search warrant or other authority of law. The argument that police officers would have to give *Ferrier* warnings with every routine visit and that they would be greatly impeded in their capabilities is illusory; however, more fundamentally, the purpose of article I, section 7 is not for police convenience but, quite the contrary, for protection of individual privacy.

The Court of Appeals in *Kennedy* recognized that the distinction between consent to enter and consent to search is not persuasive because once officers have access to a home they can seize what is in plain view. *State v. Kennedy*, 107 Wn. App. 972, 977, 29 P.3d 746 (2001). The majority criticizes the reasoning of the *Kennedy* opinion as "troubling," claiming a seizure in plain view is by definition not a search. Majority at 565. Thus, the majority reasons that when officers utilize plain view they are not requesting consent to search and *Ferrier* need not apply.

However the majority's fallacy overlooks what is in plain view is apparent only because of the warrantless entry. The plain view doctrine is necessarily limited to the lawful vantage point of the viewer. "The doctrine requires that the officer had a prior justification for the intrusion . . . ." *State v. O'Neill*, 148 Wn.2d 564, 582-83, 62 P.3d 489 (2003); *State v. Hudson*, 124 Wn.2d 107, 114, 874 P.2d 160 (1994). Because there was no prior justification to enter Ms. Orr's home, the plain view exception to the warrant requirement is not applicable.

Moreover it is crucial to protect against the invasion of privacy. Many individuals may not be aware of the police officers' power of plain view seizure. This "power" is another reason why a *Ferrier* analysis must hinge on access to the residence rather than subjective intent of police officers to search or not.

The majority engages in semantics when it asserts that a plain view search is not a search, thus completely exempting it from *Ferrier*. I agree with *Kennedy* that the "officers' request for permission to enter is, in effect, a request for permission to 'search' for anything in plain view," and I can think of no reason why the home dweller should not be informed of his right to refuse "consent" to entry. *Kennedy*, 107 Wn. App. at 977.

This court has held, "[i]n no area is a citizen more entitled to his privacy than in his or her home." *State v. Young*, 123 Wn.2d 173, 185, 867 P.2d 593 (1994).

I stand by that constitutional principle and therefore dissent.

JOHNSON, J., concurs with SANDERS, J.