197 P.3d 682 (2008)
STATE of Washington, Respondent,
v.
Peter James FREEPONS, Appellant.
State of Washington, Respondent,
v.
Brian James Hazzard, Appellant.
Nos. 26496-3-III, 26551-0-III.
Court of Appeals of Washington, Division 3.
December 11, 2008.
*683 Larry C. Stephenson, Attorney at Law, Kennewick, WA, Joanne G. Comins Rick, Halstead & Comins Rick PS, Prosser, WA, for Appellant.
Megan Ann Bredeweg, Attorney at Law, Kennewick, WA, for Respondent.
¶ SCHULTHEIS, C.J.
¶ 1 Peter Freepons and Brian Hazzard appeal their convictions for manufacturing marijuana. They contend that the court erred in denying their joint motion to suppress the evidence from a search. They argue that their consent to permit deputies to come into their home and search was vitiated by the deputies' failure to give Ferrier[1] warnings. We conclude that because the deputies' primary purpose was to investigate a crime and look for the perpetrator, Ferrier warnings were required. We therefore reverse.

FACTS
¶ 2 On August 27, 2005, a Honda registered to Adam Byrne was involved in a one-car accident in rural Benton County at about 3 a.m. The car appeared to have been rolled and a window was broken, but it was found locked with its alarm activated. Officers went to the Byrne residence and could not locate Adam or his brother Bryan. The car was towed away from the accident scene. This information was shared with Benton County Sheriff Deputies Chris Fitzpatrick and Carlos Trevino before their 6 a.m. shift.
¶ 3 Adam Byrne, 19 years old, was found lying by the side of the road at 6:30 a.m., approximately one mile from where his car was found. Deputies Fitzpatrick and Trevino responded. Adam was dirty and smelled of intoxicants but he was apparently not injured. He was taken into custody for suspicion of underage alcohol consumption and read his rights. Adam waived his rights and consented to a breath test, which resulted in a 0.065 alcohol reading.
¶ 4 Adam told officers that he had been drinking at Mr. Hazzard's residence and got lost trying to walk home. He denied knowing anything about his car being wrecked and reported last seeing his car parked at Mr. Hazzard's house, unlocked, with the keys on *684 the driver's seat. Adam told deputies that his brother, Bryan Byrne, had also attended Mr. Hazzard's party and he may have taken the car. Adam told the deputies that his brother did not have a cell phone. The deputies found a Honda key and remote entry key fob in Adam's pocket. The deputies suspected that Adam was not telling the truth about his involvement in the wreck.
¶ 5 The deputies had Adam direct them to Mr. Hazzard's residence. They observed several dozen empty beer cans in the yard and through the window they could see three Benton County road signs. The deputies recognized the signs as stolen property and believed there had been underage drinking on the premises.
¶ 6 Mr. Hazzard and Mr. Freepons, who (according to the court's findings) were both 18 years old at the time, came to the door. Because of the evidence of criminal activity and contraband, Deputy Fitzpatrick gave Miranda[2] warnings to Mr. Hazzard and Mr. Freepons. He told the men that there was a car accident and they were looking for Bryan Byrne. He asked them if Adam and Bryan had been to a party at the residence the previous day. They responded that the brothers were there the previous evening but were no longer there.
¶ 7 The men agreed to allow deputies in the house to look for Bryan Byrne. Deputy Trevino accompanied Mr. Freepons inside the residence while Deputy Fitzpatrick remained outside with Mr. Hazzard. Mr. Hazzard provided Deputy Fitzpatrick with Bryan Byrne's cell phone number when asked if Bryan had a cell phone.
¶ 8 Meanwhile, Deputy Trevino followed Mr. Freepons through the house. Mr. Freepons opened doors to allow the deputy to look inside. Mr. Freepons passed a door that he did not open, which prompted Deputy Trevino to ask whose room it was. Mr. Freepons responded that it was "`no one[']s room.'" Freepons Clerk's Papers at 17 (Finding of Fact 20). Deputy Trevino opened the door without asking permission and immediately saw what he recognized as growing marijuana. He continued his search for Bryan Byrne and arrested Mr. Freepons and Mr. Hazzard for the marijuana grow upon leaving the residence. After re-reading Miranda warnings, Mr. Freepons and Mr. Hazzard admitted to tending to the marijuana plants. Both men were informed of their Ferrier rights and signed written waivers for a second search of the residence, when evidence of the growing marijuana was collected.
¶ 9 Mr. Freepons and Mr. Hazzard were each charged with one count of manufacturing a controlled substance. They both moved to suppress the evidence, arguing that the search was unlawful because Ferrier warnings were required for the first search. The trial court disagreed, concluding that, given its finding that the purpose of the entry was to search for Bryan Byrne and not to investigate a crime, Ferrier warnings were not required.
¶ 10 Mr. Freepons and Mr. Hazzard were convicted on stipulated facts. Findings of fact and conclusions of law were entered for the suppression motion and trial. This appeal follows.

DISCUSSION
¶ 11 Mr. Freepons and Mr. Hazzard do not challenge the court's findings. When findings are unchallenged, they are verities on appeal. State v. Hill, 123 Wash.2d 641, 647, 870 P.2d 313 (1994). This court reviews a trial court's denial of a suppression motion for errors of law de novo. State v. Acrey, 148 Wash.2d 738, 745, 64 P.3d 594 (2003).
¶ 12 Warrantless searches of constitutionally protected areas are presumed unreasonable absent proof that one of the well established exceptions applies. State v. Ladson, 138 Wash.2d 343, 349, 979 P.2d 833 (1999). The State bears the burden of establishing an exception to the warrant requirement. State v. Potter, 156 Wash.2d 835, 840, 132 P.3d 1089 (2006).
¶ 13 A warrantless search is constitutional when valid consent is granted. Washington v. Chrisman, 455 U.S. 1, 9-10, *685 102 S.Ct. 812, 70 L.Ed.2d 778 (1982); State v. Cantrell, 124 Wash.2d 183, 187, 875 P.2d 1208 (1994). Mr. Freepons and Mr. Hazzard essentially argue that their consent to enter the residence was not voluntary because they were not provided with warnings required by Ferrier.
¶ 14 The Washington Constitution, article I, section 7, recognizes a person's right to privacy with no express limitations. Ferrier, 136 Wash.2d at 111, 960 P.2d 927. Under Ferrier:
[W]hen police officers conduct a knock and talk for the purpose of obtaining consent to search a home, and thereby avoid the necessity of obtaining a warrant, they must, prior to entering the home, inform the person from whom consent is sought that he or she may lawfully refuse to consent to the search and that they can revoke, at any time, the consent that they give, and can limit the scope of the consent to certain areas of the home.
Id. at 118, 960 P.2d 927.
¶ 15 Ferrier held that a knock and talk is inherently coercive. Id. at 114-15, 960 P.2d 927. In a knock and talk, law enforcement officers knock on the door of a suspect's home, obtain permission to enter to discuss a complaint, and later ask for permission to search the premises. Id. at 107, 960 P.2d 927. The Supreme Court has since clarified that the Ferrier requirement is limited to situations where police request entry for the purpose of obtaining consent to conduct a warrantless search for contraband or evidence of a crime. State v. Khounvichai, 149 Wash.2d 557, 563, 566, 69 P.3d 862 (2003).
¶ 16 Here, though the court found that the deputies were interested in finding Bryan Byrne, the State did not show and the court did not find that the desire to find Mr. Byrne was motivated by anything other than to look for evidence of a crime associated with the rollover accident.
¶ 17 That Mr. Freepons and Mr. Hazzard were given Miranda warnings prior to the deputies' entry into the house shows that the deputies anticipated that they would find what they were looking for  evidence of criminal activity within the home. The deputies did not deny that the purpose of finding Bryan Byrne related to the criminal investigation involving the rolled car regardless of who was driving, i.e., leaving the scene of an accident, hit-and-run, driving while intoxicated, minor in possession of alcohol, or vehicular assault.
¶ 18 The Washington Supreme Court has noted that "there is a fundamental difference between requesting consent to search a home and requesting consent to enter a home for other legitimate investigatory purposes." Khounvichai, 149 Wash.2d at 564, 69 P.3d 862 (emphasis added). Here, the deputies' intention to search the residence for evidence of a crime was clear.
¶ 19 Reversed.
¶ I CONCUR: SWEENEY, J.
¶ BROWN, J. (dissenting).
¶ 20 Here the deputies were not seeking to conduct a "knock and talk" search of the appellants' residence for contraband or crime evidence against the appellants. The deputies merely inquired about Bryan Byrne in an unrelated matter. When appellants denied Mr. Byrne's presence, the deputies asked to check appellants' negative response by looking inside. Appellants consented. When inside, a deputy saw a marijuana grow, but did not find Mr. Byrne and left. After clearing up the Byrne matter, the deputies told appellants they wanted to go back into the residence to investigate the marijuana grow, and asked for and received consent conforming to State v. Ferrier, 136 Wash.2d 103, 118-19, 960 P.2d 927 (1998).
¶ 21 The Ferrier court's focus was to prevent unwarranted police intrusions against crime suspects using a "knock and talk" ruse when police suspect the presence of contraband or crime evidence and have ample opportunity to secure a warrant. Id. at 115, 960 P.2d 927; see also State v. Khounvichai, 149 Wash.2d 557, 559, 69 P.3d 862 (2003) (stating, "[w]e ... reiterate that [Ferrier ] warnings are required only when police officers seek entry to conduct a consensual search for contraband or evidence of a crime"). In Ferrier, unlike here, the officers admitted they conducted the "knock and *686 talk" to avoid the necessity of obtaining a search warrant. Id. Here, the deputies were not seeking crime evidence against the appellants when they secured the appellants' consent to search. Moreover, considering the emergent and community caretaking nature of their inquiry, the deputies did not have "`ample opportunity to obtain a warrant,'" as in Ferrier. Ferrier, 136 Wash.2d at 115, 960 P.2d 927 (quoting State v. Leach, 113 Wash.2d 735, 744, 782 P.2d 1035 (1989)). Thus, even Ferrier would seem to allow a consent entry under our facts.
¶ 22 Further, the majority reasons "[t]hat Mr. Freepons and Mr. Hazzard were given Miranda[[1]] warnings prior to the deputies' entry into the house shows that the deputies anticipated that they would find what they were looking for  evidence of criminal activity within the home." Majority at 685. However, one of the factors in determining whether consent to search is freely given is whether Miranda warnings were given prior to obtaining consent. See State v. Bustamante-Davila, 138 Wash.2d 964, 981, 983 P.2d 590 (1999) (setting forth the test for determining voluntariness of consent to search). Giving Miranda warnings does not factor into the analysis of whether Ferrier warnings are required prior to a consent search.
¶ 23 Accordingly, I respectfully dissent.
NOTES
[1] State v. Ferrier, 136 Wash.2d 103, 960 P.2d 927 (1998).
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).