IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32547-4-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| OCTAVIANO ALVAREZ, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Octaviano Alvarez challenges three felony convictions, arguing
that evidence was improperly seized from him and that his counsel was ineffective for
failing to vigorously challenge the seizure. Concluding that the seizure was proper and
that counsel therefore did not err, we affirm.

## FACTS

Mr. Alvarez was accused of committing residential burglary, theft of a motor
vehicle, and possession of a stolen vehicle for offenses occurring in Yakima on October
9, 2013. The possession of a stolen vehicle charge involved a silver Honda Accord that
had been taken about 8:00 a.m. that day. Deputy Sheriff Brian McIlrath discovered the
car about an hour later on Cemetery Road. It had crashed into a vineyard trellis near an

irrigation ditch, completely disabling the vehicle. After the car was removed, the officer could tell that the driver had walked and crawled across the vineyard and the irrigation ditch and would have been muddied in the process. The person then walked away through the vineyard, leaving footprints.

Later that morning Arnoldo Avila returned from work to his residence at the home of the Madrigals on Schoon Road. He immediately noticed that things were amiss. A truck[1] on the property had been moved and tampered with; items from the house were inside it. Mr. Avila entered the home and encountered an intruder wearing a backpack. He told Mr. Avila that he was hiding from the police because he had just stolen a car that he had left on Cemetery Road. He asked if he could hide in the house. Mr. Avila threw him out and called 911.

Dispatch alerted officers of the burglary and described the suspect as a man wearing a black shirt with a square pattern, carrying a black backpack and having wet feet. A detective reported to the scene and interviewed Mr. Avila. Meanwhile, Deputy McIlrath drove up Alboro Road. He spotted Mr. Alvarez, whom he knew from prior contacts, standing in a doorway of a house about a half-mile from the burglary. Since Mr. Alvarez matched the description of the burglary suspect, the deputy stopped his car and approached. He asked what was going on and Mr. Alvarez replied that he was

---

[1] This was the basis of count II, theft of a motor vehicle.

visiting his friend. However, the homeowner denied knowing Mr. Alvarez and wanted him off his property. Mr. Alvarez was wearing a plaid shirt that was muddied on the sleeves and down the front; his jeans also were muddy.

The zipper on the backpack Mr. Alvarez was wearing was pulled half way down, exposing "radio equipment," including "stereos and speaker equipment." Report of Proceedings (RP) at 108. Deputy McIlrath arrested Mr. Alvarez for burglary. Mr. Avila was transported to the scene and identified Mr. Alvarez as the man inside the house. Mr. Madrigal subsequently identified the stereo equipment as having been stolen from the truck. Deputy McIlrath placed Mr. Alvarez in his patrol car and put Mr. Alvarez's belongings in the trunk of the vehicle.

Deputy Steve Changala responded to the scene and looked at Mr. Alvarez's shoe bottoms to observe the print pattern. He later testified that the print pattern was consistent with the prints observed leading away from the stolen car. The deputy then drove to the scene of the car wreck and followed the tracks through the vineyard and across other properties, including a marsh, until they reached the area of Schoon Road. He returned and obtained Mr. Alvarez's shoes from Deputy McIlrath. Deputy Changala then made new tracks with the shoes beside existing tracks and took pictures for comparison. The photographs ultimately were admitted during trial without objection.

3

The case eventually proceeded to jury trial on the three noted counts. Defense counsel sought to suppress the shoe print photographs and the stereo equipment recovered from the backpack, contending that the officers needed his client's consent or a warrant to seize the items. He noted that the prosecution would be arguing "plain view" and search incident to the arrest as the basis for using the evidence. Counsel's main concern was the showing of the stereo equipment to Mr. Madrigal to confirm that the material was taken from his truck.

The trial judge concluded that the initial observation of the stereo equipment was in either "open view" or "plain view." The subsequent seizure of the backpack and inventory of its contents were conducted incident to the arrest for burglary. RP at 66-67. After the State's opening statement, but before the testimony of the first witness, Deputy McIlrath, the court asked for an offer of proof concerning the basis for the arrest. After hearing the State's proffer, which was reading large excerpts from Deputy McIlrath's report, the court concluded that the arrest for burglary was valid and the backpack was properly seized. RP at 92. The court also concluded that there was no expectation of privacy in the shoes once Mr. Alvarez was arrested. RP at 94-95.

The jury found Mr. Alvarez guilty on the three charged counts. The court imposed standard range terms on each of the offenses. Mr. Alvarez then timely appealed to this court.

4

No. 32547-4-III
*State v. Alvarez*

ANALYSIS

Mr. Alvarez contends that either the trial court erred in finding the arrest lawful and the backpack contents in "plain view," or his counsel erred in not pursuing the motion to suppress more vigorously. Because the record amply supports the determination of probable cause to arrest Mr. Alvarez for residential burglary, his remaining arguments are moot or without merit.

A person commits residential burglary when he enters or remains unlawfully in a dwelling (other than a vehicle) with the intent to commit a crime against a person or property therein. RCW 9A.52.025(1). Probable cause to arrest "exists where the facts and circumstances within the arresting officer's knowledge and of which the officer has reasonably trustworthy information are sufficient to warrant a person of reasonable caution in a belief that an offense has been committed." *State v. Terrovona*, 105 Wn.2d 632, 643, 716 P.2d 295 (1986). The existence of probable cause is a legal issue that is reviewed de novo by our appellate courts. *State v. Chamberlin*, 161 Wn.2d 30, 40, 162 P.3d 389 (2007).

Mr. Alvarez argues that the totality of the evidence did not support Deputy McIlrath's decision to arrest him. He acknowledges that Mr. Avila provided "reasonably trustworthy information that an officer could rely on" concerning the existence of a

5

burglary and the description of the suspect.[2] Br. of Appellant at 11. He takes issue with the deputy connecting him to the suspect in that crime. The deputy's observations satisfactorily made that connection.

Mr. Avila's information described a residential burglary in progress—a strange man in the house and items of personal property that already had been taken outside to a truck that had been moved to apparently facilitate carrying away the proceeds of the larceny. He described the man for the 911 operator. Upon seeing Mr. Alvarez, Deputy McIlrath testified that he "matched the description." RP at 107, 110. The deputy's report described for the judge what Mr. Alvarez was wearing—a dark jean shirt with squares that was muddy on the sleeves, muddied jeans, and a black backpack with stereo equipment visible. RP at 91. Although Mr. Avila's initial report did not describe what had been taken and he later would testify that the backpack was zippered closed when he observed it, the deputy's observations were consistent both with what Mr. Avila had seen and what a burglar might be carrying away from the scene. In other words, the items

---

[2] These concessions were proper. A named citizen informant is presumptively reliable. *State v. Wible*, 113 Wn. App. 18, 24, 51 P.3d 830 (2002) (quoting *State v. Northness*, 20 Wn. App. 551, 557-58, 582 P.2d 546 (1978)). Reasonable suspicion for a stop may be supplied by an eyewitness report of criminal activity to an officer. *State v. Lee*, 147 Wn. App. 912, 918, 199 P.3d 445 (2008), *review denied*, 166 Wn.2d 1016 (2009).

observed in the partially open backpack enhanced the victim's report since electronic equipment is frequently stolen and the deputy's observation did not detract from the information supplied by Mr. Avila. Given that the description "matched," the deputy had probable cause to believe Mr. Avila was the burglar. Coupled with his lie about visiting his friend when the deputy contacted him outside Mr. Zach Scole's house, there was ample information to lead a reasonable law enforcement officer in Deputy McIlrath's position to believe Mr. Alvarez had committed residential burglary.

Mr. Alvarez argues that there was no reliable information describing how the suspect could go from the burglary at the Madrigal's residence to Mr. Scole's house. There was no requirement that the deputy know how the suspect could traverse the half mile during the period while Mr. Avila was calling in the crime and deputies were responding to it. The issue was whether *he* fit the description, not how he got to where he was observed. Even if it were probable that other muddy men with wet shoes wearing a black backpack and dark patterned shirt were within a half mile of the Madrigal home, that information would not have detracted from the fact that Mr. Alvarez fit the description. The hypothetical existence of other people fitting the description did not negate the fact Mr. Alvarez also did so.

The deputy had probable cause to arrest Mr. Alvarez for residential burglary. The trial court correctly denied the motion to suppress the evidence.[3]

Our conclusion moots discussion of the "plain view" argument since the evidence was seized, and used, pursuant to the arrest and lawful search incident to that arrest. We do note, however, that if the deputy had in fact seized[4] the backpack on the basis of the observations without first arresting Mr. Alvarez, this would present an "open view" problem rather than a "plain view" issue. A "plain view" occurs in the situation where an officer is intruding in a constitutionally protected place at the time he makes an observation, while an "open view" occurs from a "nonconstitutionally protected area." *State v. Kennedy*, 107 Wn.2d 1, 10, 726 P.2d 445 (1986). Here the deputy made his observations from outside the Scole home in an open area where Mr. Alvarez had no constitutionally protected interests.

---

[3] Mr. Alvarez does not independently challenge the use of his tennis shoes to compare the print to the prints found in the vineyard. It is proper for police to use shoes seized from a defendant to investigate prints left at the scene of an unrelated crime. *State v. Cheatam*, 150 Wn.2d 626, 633-43, 81 P.3d 830 (2003) (officers who arrested defendant for rape could use his shoes to compare the prints to those left at the scene of an unrelated rape).

[4] The evidence observed by the officer was not the product of a search and would be admissible even if the stereo equipment had been suppressed. *See State v. Khounvichai*, 149 Wn.2d 557, 564-66, 69 P.3d 862 (2003).

No. 32547-4-III
*State v. Alvarez*

Finally, the conclusion that probable cause existed negates the need to discuss the derivative argument that counsel performed ineffectively. To prevail on such a claim, Mr. Alvarez would have to show both that his counsel erred and that the error prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 689-91, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). He cannot demonstrate error on these facts. Probable cause did exist for the arrest.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Brown, A.C.J.

_____
Lawrence-Berrey, J.

9