FILED
COURT OF APPEALS
DIVISION II

2015 JUL 21 AM 9:25

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                  Respondent,<br><br>    v.<br><br>JOSE ALONSO BERNAL-MARTINEZ,<br><br>                  Appellant. | No. 44922-6-II<br>Consolidated with No. 46041-6-II<br><br><br><br>UNPUBLISHED OPINION |
| In re the Personal Restraint Petition of:<br><br>JOSE ALONSO BERNAL-MARTINEZ,<br><br>                  Petitioner. | |

BJORGEN, A.C.J. — José Alonso Bernal-Martinez appeals from his conviction for possession of a controlled substance with intent to deliver, following a bench trial on stipulated facts, contending that the trial court erred in denying his motion to exclude evidence obtained during a warrantless search of his apartment. Bernal-Martinez also submits a personal restraint petition raising various other claims. Because the trial court erred in denying Bernal-Martinez's suppression motion, we reverse.

FACTS

Vancouver Police Detective Shane Hall, together with several other officers, stopped a black Ford Fusion shortly after observing the driver leave an apartment then under surveillance for suspected drug activity. After determining that the driver spoke only Spanish, Hall, a fluent Spanish speaker, informed him in Spanish that police suspected him of illegal drug activity. The driver identified himself as Daniel Ponce-Gutierrez and stated that he had come from the apartment where he lived.

When Hall asked where he lived, Ponce-Gutierrez described how to get to the apartment police had just observed him leaving, but did not know the apartment's address or the name of the complex. Hall explained that police wished to search the Fusion and the apartment, and Ponce-Gutierrez responded that they could search both locations. Ponce-Gutierrez stated that he was the only person living at the apartment and that no one else would be there. Hall then administered the *Ferrier*[1] advisements, and Ponce-Gutierrez again agreed to allow police to search.

Officers searched the Fusion, but found nothing. Ponce-Gutierrez then agreed to return to the apartment with the officers. After Hall drove him back to the apartment complex, Ponce-Gutierrez walked to the apartment, accompanied by Hall and seven other armed, uniformed officers, and opened the door with a key from the same keychain that held the key to the Fusion. Ponce-Gutierrez never revoked or limited his consent to search the apartment.

Upon entering the apartment, Hall saw Bernal-Martinez inside. Hall asked who he was, and Bernal-Martinez identified himself and responded that he was Ponce-Gutierrez's roommate.

---

[1] *State v. Ferrier*, 136 Wn.2d 103, 118, 960 P.2d 927 (1998).

2

While the other officers waited with Ponce-Gutierrez in the hallway, Hall spoke with Bernal-Martinez alone in the bedroom.[2]

While in the bedroom, Bernal-Martinez indicated to Hall that he did not have a warrant and asked Hall what would happen if he objected to the search. Hall responded by stating, "I'm - I'm not going to tell you that because I don't want to influence you. I don't want to be coercive in this -- in this case to get your consent." 2 Verbatim Report of Proceedings (VRP) at 228-29. After Hall gave him the *Ferrier* advisements, Bernal-Martinez orally agreed to let police search the apartment and signed a Spanish language consent form that also included the *Ferrier* advisements. Officers searched the apartment and found more than six pounds of heroin, over $42,000 in cash, drug packaging materials, and lists of names associated with specific dates and dollar amounts.

Hall advised Bernal-Martinez of his *Miranda*[3] rights and asked about the items discovered. Bernal-Martinez admitted to his involvement in illegal drug trafficking and stated that all the money found derived from drug sales.

PROCEDURAL HISTORY

The State charged Bernal-Martinez with possession of a controlled substance with intent to deliver. Bernal-Martinez moved to suppress the evidence seized in the search of the apartment on the grounds that police did not obtain valid consent to search. After holding a hearing under CrR 3.5 and 3.6 to determine the admissibility of the evidence seized and statements Bernal-Martinez made to police, the trial court ruled the evidence admissible. The trial court entered

---

[2] Other than Bernal-Martinez's testimony at the CrR 3.6 hearing, described below, the record contains little about what transpired in the bedroom. After Bernal-Martinez testified, the court invited rebuttal testimony, but the State presented none.

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

3

findings and conclusions in support of its ruling. Particularly relevant here, the trial court's written conclusions of law include the following:

> 4. The State (Plaintiff) has met its burden of showing by clear, cogent and convincing evidence, that the consent to search given by Defendant Bernal-Martinez was not a product of any coercion by law enforcement.
> 5. The search of the residence was lawful and the evidence obtained therefrom is admissible.

Clerk's Papers (CP) at 34-39. These conclusions and the trial court's findings challenged by Bernal-Martinez are discussed in the Analysis below.

Bernal-Martinez waived his jury trial rights and consented to a bench trial on stipulated facts. Based on the stipulations, the court found each element of the charged offense proved beyond a reasonable doubt. The court sentenced Bernal-Martinez to 36 months' confinement and 12 months' community custody.

We granted Bernal-Martinez's motion to file an untimely appeal. Bernal-Martinez, acting pro se, filed a timely personal restraint petition, which a commissioner of our court consolidated with his direct appeal.

## ANALYSIS

In his appeal, Bernal-Martinez challenges the trial court's denial of his suppression motion, assigning error in whole or in part to the trial court's findings of fact 9, 12, 14, 15, 16, 21, 24, 25, and 27, and to conclusion of law 4, in which the trial court found that Bernal-Martinez voluntarily consented to the search. Other than those we address below, Bernal-Martinez's challenges to the trial court's findings concern those facts supporting the trial court's determination that Ponce-Gutierrez validly consented to a search. Because we find it unnecessary to address the validity of Ponce-Gutierrez's consent, we do not address the assignments of error that relate solely to that issue.

4

Bernal-Martinez contends that the trial court erred in denying his motion to suppress, because the search violated his right to privacy under article I, section 7 of the Washington Constitution. In support of his contentions, he argues first that Ponce-Gutierrez did not have authority to consent to a search of the apartment, challenging the trial court's finding that Ponce-Gutierrez resided there.[4] Second, Bernal-Martinez argues that he did not validly consent to the search because (1) no one gave him the *Ferrier* advisements until after several armed officers had entered the apartment, (2) Hall did not correctly translate the *Ferrier* advisements and thus failed to inform Bernal-Martinez that he could limit the scope of his consent to search, (3) no one administered the *Miranda* advisements before seeking Bernal-Martinez's consent to search, (4) Bernal-Martinez had only an eighth-grade education, which he received in Mexican schools, and had no prior experience with the criminal justice system, and (5) according to Bernal-Martinez's testimony, one officer had pointed a gun at him, and Hall told him the officers would search whether or not he consented.

After setting forth the standard of review and governing law, we consider whether the trial court's unchallenged findings, together with the challenged findings supported by substantial evidence, properly support its conclusion that evidence obtained in the search is admissible against Bernal-Martinez even though the officers did not have a warrant. Concluding that the State failed to meet its burden of demonstrating that Bernal-Martinez voluntarily consented, and that the court therefore erred in denying the suppression motion, we find it

---

[4] Invoking RAP 2.5, the State invites this court to refuse to consider Bernal-Martinez's claim that Ponce-Gutierrez lacked authority, alleging that he failed to raise the issue in the trial court. As Bernal-Martinez points out, however, the record shows that he did explicitly challenge Ponce-Gutierrez's authority to consent during the CrR 3.6 hearing. We nonetheless decline to address the issue because we hold Bernal-Martinez's consent invalid regardless of whether Ponce-Gutierrez had such authority.

5

unnecessary to consider the validity of Ponce-Gutierrez's consent and decline to address the remainder of Bernal-Martinez's claims.

A.     Standard of Review and Governing Law

In an appeal from a trial court's denial of a suppression motion, we consider unchallenged findings of fact verities and review disputed findings for substantial evidence. *State v. Dancer*, 174 Wn. App. 666, 670, 300 P.3d 475 (2013), *review denied*, 179 Wn.2d 1014 (2014). Substantial evidence means evidence in the record sufficient to persuade a rational, fair-minded person of a finding's truth. *Dancer*, 174 Wn. App. at 670. We leave credibility judgments to the trial court. *State v. Tyler*, 177 Wn.2d 690, 715, 302 P.3d 165 (2013). We review de novo whether a trial court's conclusions of law properly follow from the findings of fact. *Dancer*, 174 Wn. App. at 670.

Article I, section 7 of the Washington Constitution provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." This provision protects the right to privacy against warrantless searches more extensively than the United States Constitution's Fourth Amendment. *State v. Morse*, 156 Wn.2d 1, 10, 123 P.3d 832 (2005); *see also State v. Eisfeldt*, 163 Wn.2d 628, 634-39, 185 P.3d 580 (2008); *Ferrier*, 136 Wn.2d at 110-18; *State v. Gunwall*, 106 Wn.2d 54, 64-70, 720 P.2d 808 (1986).

Our courts consider warrantless searches unreasonable per se, unless a recognized exception to the warrant requirement applies. *Dancer*, 174 Wn. App. at 671, 675 (citing *State v. Khounvichai*, 149 Wn.2d 557, 562, 69 P.3d 862 (2003). The "narrow exceptions" to the warrant requirement are "jealously and carefully drawn." *Ferrier*, 136 Wn.2d at 111 (internal quotation marks omitted). "The State must establish the exception to the warrant requirement by clear and convincing evidence." *State v. Garvin*, 166 Wn.2d 242, 250, 207 P.3d 1266 (2009).

The highest constitutional protection of privacy applies to a person's residence, "plac[ing] an onerous burden upon the government to show a compelling need to act outside of our warrant requirement." *State v. Chrisman*, 100 Wn.2d 814, 822, 676 P.2d 419 (1984); *accord State v. Ruem*, 179 Wn.2d 195, 200, 313 P.3d 1156 (2013). "'Where the police have ample opportunity to obtain a warrant, [courts] do not look kindly on their failure to do so.'" *State v. Leach*, 113 Wn.2d 735, 744, 782 P.2d 1035 (1989) (quoting *United States v. Impink*, 728 F.2d 1228, 1231 (9th Cir. 1984)).

Washington courts recognize consent as a valid exception to the warrant requirement. *Dancer*, 174 Wn. App. at 671. The State bears the burden of establishing that the person freely and voluntarily consented under the totality of the circumstances. *Dancer*, 174 Wn. App. at 671, 675-76. The State's failure to meet its burden of establishing valid consent, or some other recognized exception to the warrant requirement, renders inadmissible any evidence a warrantless search yielded. *State v. Ladson*, 138 Wn.2d 343, 350, 359-60, 979 P.2d 833 (1999).

In *Ferrier*, our Supreme Court interpreted article I, section 7 of the Washington Constitution to impose an additional requirement:

> when police officers conduct a knock and talk for the purpose of obtaining consent to search a home, and thereby avoid the necessity of obtaining a warrant, they must, prior to entering the home, inform the person from whom consent is sought that he or she may lawfully refuse to consent to the search and that they can revoke, at any time, the consent that they give, and can limit the scope of the consent to certain areas of the home. The failure to provide these warnings, prior to entering the home, vitiates any consent given thereafter.

7

136 Wn.2d at 118-19 (footnote omitted). Although *Ferrier* addressed the knock-and-talk tactic specifically, the court subsequently stated[5] that the requirements apply "'when police officers seek entry to conduct a consensual search for contraband or evidence of a crime.'" *Ruem*, 179 Wn.2d at 205-06 (quoting *Khounvichai*, 149 Wn.2d at 559).

Where, as here, questions arise under article I, section 7 of our state constitution as to who has authority to give consent to search a particular location and whom such consent binds, our courts apply the "common authority" standard from *United States v. Matlock*, 415 U.S. 164, 170-71, 94 S. Ct. 988, 39 L. Ed. 2d 242 (1974) and *State v. Mathe*, 102 Wn.2d 537, 543-44, 688 P.2d 859 (1984). Our Supreme Court has made clear, however, that another person's consent is never valid against a defendant with equal authority over the premises who is actually present at the time of the search. *Morse*, 156 Wn.2d at 15; *accord Leach*, 113 Wn.2d at 744 ("Where the police have obtained consent to search from an individual possessing, at best, equal control over the premises, that consent remains valid against a cohabitant, who also possesses equal control, only while the cohabitant is absent.").

The *Morse* court also explicitly rejected the "apparent authority doctrine" under which federal courts will uphold a warrantless search against a Fourth Amendment challenge if officers reasonably believed that the consenting party had the requisite authority, reasoning that "our constitution focuses on the rights of the individual rather than on the reasonableness of the government action." 156 Wn.2d at 12.

Because he was present at the time of the search and had authority over the premises at least equal to Ponce-Gutierrez's, police had to obtain Bernal-Martinez's valid consent to render

---

[5] We acknowledge that only four Justices signed the lead opinion in *Ruem*. Justice Wiggins's separate opinion, however, clearly conformed to the plurality's view on this point, and would have extended the *Ferrier* protections further. 179 Wn.2d at 210-12.

the fruits of the search admissible against him regardless of Ponce-Gutierrez's authority to consent to a search. *Morse*, 156 Wn.2d at 15; *Leach*, 113 Wn.2d at 744. The trial court determined in conclusion 4 that Bernal-Martinez had validly consented to the search of the premises, ruling that the State "met its burden of showing by clear, cogent and convincing evidence, that the consent to search given by Defendant Bernal-Martinez was not a product of any coercion by law enforcement." CP at 38. We turn now to the correctness of that determination.

B.       Voluntariness of Bernal-Martinez's Consent To Search the Apartment

The trial court's ultimate legal holding in conclusion 5 was that "[t]he search of the residence was lawful and the evidence obtained therefrom is admissible" despite the fact that the officers did not obtain a search warrant. CP at 38. Whether Bernal-Martinez freely and voluntarily consented is a question of fact, *Dancer*, 174 Wn. App. at 676, a finding dispositive as to that ultimate legal conclusion. The trial court's assertion that the State met its burden of proving Bernal-Martinez's consent voluntary, designated conclusion of law 4, is effectively a factual finding that he freely and voluntarily consented. We treat factual determinations that are erroneously labelled conclusions of law as findings of fact. *State v. Ross*, 141 Wn.2d 304, 309, 4 P.3d 130 (2000); *Willener v. Sweeting*, 107 Wn.2d 388, 394, 730 P.2d 45 (1986). Therefore, we treat conclusion 4 as a finding of fact.

Our Supreme Court has specified in the search-and-seizure context that the reviewing court "employs a 'totality of circumstances' test to determine whether the consent was valid." *State v. Bustamante-Davila*, 138 Wn.2d 964, 981, 983 P.2d 590 (1999). In *Dancer*, we articulated the applicable test as follows:

> Whether consent is free and voluntary is a question of fact determined by the totality of the circumstances, including (1) whether police gave *Miranda*

9

warnings before obtaining consent; (2) the degree of education and intelligence of the consenting person; and (3) whether the police advised the consenting person of his right to refuse consent. No one factor is dispositive, and other factors may be considered, including whether the person was cooperative or refused consent before granting consent, whether law enforcement had to repeatedly request consent, and whether the defendant was restrained.

174 Wn. App. at 676 (citations omitted). In *State v. Russell*, 180 Wn.2d 860, 872, 330 P.3d 151 (2014), our Supreme Court recently held that the State failed to prove a suspect's consent to search inside a small container, discovered during a stop and frisk, voluntary where the officer did not give the *Miranda* advisements or explain that the suspect could refuse, and the record contained no evidence regarding the suspect's intelligence or education.

Returning to the events underlying this appeal, in finding 24 the trial court stated that

Hall provided a "Voluntary Permission to Search" form, written in Spanish, to Defendant Bernal-Martinez and reviewed the *Ferrier* warnings with him. Defendant Bernal-Martinez indicated that he understood the Ferrier warnings and was willing to give consent for the search. Defendant Bernal-Martinez signed the "Voluntary Permission to Search" form.

CP at 37. Substantial evidence in the record supports this finding.

In addition, the record shows that (1) Hall advised Bernal-Martinez of his right to refuse, revoke, or limit the scope of his consent[6] in clearly comprehensible Spanish,[7] (2) during the events at issue, Bernal-Martinez was 26 years old, and knew that police "need[] a warrant from a

---

[6] Bernal-Martinez challenges the validity of his consent based on alleged inadequacies in Hall's translation of the *Ferrier* advisements. The State counters that we should not consider the claim because Bernal-Martinez did not raise it in the trial court and it relies on matters outside the record. We agree with the State and decline to address the claim under RAP 2.5.

[7] Hall testified to extensive education in and experience with the Spanish language, including having lived and worked in Mexico for two years and earned a Bachelor of Arts degree majoring in Spanish. Bernal-Martinez testified that, although Hall spoke with an accent and mispronounced some words, he found Hall's Spanish easy to understand.

judge" to search someone's residence, 2 VRP at 173; (3) other than standing, armed, in the apartment, the officers did nothing to restrain or threaten Bernal-Martinez; and (4) Bernal-Martinez affirmatively agreed orally and in writing to allow the search. Substantial evidence thus supports the trial court's findings as to these facts: finding 9 (finding that Hall speaks Spanish fluently), finding 24 (finding that Hall provided the consent form and explained it to Bernal-Martinez, who stated that he understood and signed it), and finding 27 (incorporating the trial court's oral ruling, which included findings that Bernal-Martinez was not restrained and knew that officers needed a warrant).

We also consider the facts supporting these findings in determining whether substantial evidence supports the trial court's finding, expressed in conclusion 4, that Bernal-Martinez voluntarily and freely consented. Even though we accept the truth of these matters, however, on closer examination we conclude that conclusion 4, properly treated as a finding of fact, is not supported by substantial evidence.

In considering whether substantial evidence supports a finding, a reviewing court must consider the question in light of the relevant burden of persuasion: as our Supreme Court recently stated in the context of a substantial evidence inquiry, "[w]hen the standard of proof is clear, cogent, and convincing evidence,[8] the fact at issue must be shown to be 'highly probable.'" *State v. Dobbs*, 180 Wn.2d 1, 11, 320 P.3d 705 (2014) (quoting *In re Welfare of Sego*, 82 Wn.2d 736, 739, 513 P.2d 831 (1973)); *see also In re Dep. of C.B.*, 61 Wn. App. 280, 282-83, 810 P.2d 518 (1991). Thus, "evidence that may be sufficiently 'substantial' to support an ultimate fact in issue based upon a 'preponderance of the evidence' may not be sufficient to support an ultimate

---

[8] We see no effective difference in this analysis between the "clear, cogent and convincing" evidence standard and the "clear and convincing" evidence standard applicable under *Garvin*, 166 Wn.2d at 250.

fact in issue, proof of which must be established by clear, cogent and convincing evidence."

*Sego*, 82 Wn.2d at 739 (footnote omitted); *accord In re Riley's Estate*, 78 Wn.2d 623, 640, 479 P.2d 1 (1970).

As noted above, we employ a totality of circumstances test, including the specific considerations listed in *Dancer*, 174 Wn. App. at 676, to determine whether consent is voluntary. For several reasons, the totality of the circumstances here fail to supply substantial evidence to a high probability that Bernal-Martinez voluntarily consented. Indeed, most of the relevant factors speak against holding Bernal-Martinez's consent voluntary: (1) the officers did not give him the *Miranda* advisements prior to seeking consent, (2) he has only an eighth grade education from a non-United States school system and no known prior convictions or other involvement with the criminal justice system, (3) although he was not restrained, multiple armed officers stood in the entryway of his apartment, (4) Hall spent over half-an-hour in Bernal-Martinez's bedroom repeatedly seeking his consent, and (5) officers advised him of his right to refuse consent only after entering his apartment in force.

We consider this last factor particularly significant. When they entered and saw Bernal-Martinez, the officers went further inside the apartment rather than giving the *Ferrier* advisements and seeking his consent before proceeding. The *Ferrier* court clearly emphasized the importance of obtaining consent "prior to entering the home," 136 Wn.2d at 118-19, in part because of the "coercive effects" officers are likely to have on residents once inside. 136 Wn.2d at 115-16. Alone in his bedroom with Hall, with several armed officers outside, a reasonable person with Bernal-Martinez's lack of experience in the criminal justice system and limited education would not likely feel free to refuse to give consent.

12

The State bore the burden of proving valid consent by clear and convincing evidence. Our inquiry is whether substantial evidence in the record supports the trial court's finding that Bernal-Martinez freely and voluntarily consented. The burden of proof, as noted, required the State's evidence at the suppression hearing to show it "highly probable" that Bernal-Martinez freely and voluntarily consented. *Dobbs*, 180 Wn.2d at 11. Instead, the evidence in the record of what transpired between Hall and Bernal-Martinez in the bedroom is sketchy at best, and most of the factors identified in *Dancer*, 174 Wn. App. at 676, speak against finding his consent voluntary. We hold that the record, viewed in its totality and through the lens of the State's evidentiary burden, does not contain substantial evidence in support of the trial court's dispositive finding that Bernal-Martinez freely and voluntarily consented to the search.

C.     Admissibility of the Evidence Obtained in the Search

Without a valid finding that Bernal-Martinez freely and voluntarily consented to the search, the trial court's findings do not support its ultimate conclusion that the evidence was admissible against Bernal-Martinez even though the officers did not obtain a warrant. *Ladson*, 138 Wn.2d at 350, 359-60. Therefore, the trial court erred in denying Bernal-Martinez's suppression motion.

Both the evidence found in the apartment and the statements Bernal-Martinez made when confronted with it should have been suppressed. *See Eisfeldt*, 163 Wn.2d at 639-41. The improperly admitted evidence comprised the State's entire case against Bernal-Martinez: absent the fruits of the warrantless search, his conviction unquestionably rests on insufficient evidence. We therefore reverse the conviction and dismiss the charge with prejudice. *See State v. Z.U.E.*, 178 Wn. App. 769, 792, 315 P.3d 1158 (2014); *State v. Hopkins*, 128 Wn. App. 855, 866, 117

13

No. 44922-6-II
(Cons. w/ No. 46041-6-II)

P.3d 377 (2005). Resolving the matter on this ground, we do not address Bernal-Martinez's personal restraint petition or the remainder of his claims on appeal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Bjorgen, A.C.J.

BJORGEN, A.C.J.

We concur:

WORSWICK, J.

SUTTON, J.

14