IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON | No. 56451-3-II |
| Respondent, | |
| v. | |
| BARRETT JONATHAN MYERS, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, C.J.—An officer stopped Barrett Jonathan Myers on suspicion that he was driving with a suspended license. After the officer placed Myers under arrest, the arresting officer asked to search Myers's vehicle. Myers consented but initially limited the scope of the search to exclude the trunk and a locked box within the vehicle. The arresting officer told Myers that the car would be impounded and a search warrant would be obtained. Myers then consented to a full search of the vehicle. Inside the locked box, the officer found a significant amount of heroin.

At trial, Myers moved to suppress the evidence found inside the vehicle, but the trial court denied his motion. A jury convicted Myers of unlawful possession of a controlled substance with intent to deliver. Myers appeals arguing that the trial court erred by denying his CrR 3.6 motion to suppress the evidence found in his vehicle. He argues that the traffic stop was pretextual and that he did not voluntarily give consent to search the vehicle. We disagree and affirm.[1]

---

[1] Myers also argued that the trial court failed to enter written findings and conclusions, but the trial court has since done so.

FACTS

Deputy Bradley Crawford was working off duty for a homeowners' association. He was wearing his department-issued uniform and driving his department-issued patrol vehicle. The trial court found the following facts about Crawford's stop of Myers and his search of Myers's car.

Around 2:00 a.m., Crawford noticed a white Kia Optima traveling on the same street where he was driving in Pierce County. When he ran the vehicle's license plate he discovered the vehicle was registered to Myers and that Myers's driver license was suspended. Crawford drove alongside the vehicle and confirmed the driver matched the Department of Licensing record photograph of Myers. Crawford initiated a stop of the vehicle, informed Myers he was stopped for driving while his license was suspended, and placed Myers in handcuffs outside of the vehicle.

Crawford noticed several hypodermic needles in the door pocket of the driver's door. After confirming Myers's license was suspended, Crawford read Myers his *Miranda*[2] rights, which Myers acknowledged and waived. Myers told Crawford that the needles were his and that he used them to ingest methamphetamine earlier in the night. Myers denied that there were any other drugs in the vehicle. When Crawford ran the license plates on the vehicle, he noticed that there had been an arrest associated with the vehicle a few weeks prior. He asked Myers if he was the one arrested, and Myers answered that it was another person who had been arrested. Crawford asked Myers if he consented to a search of the vehicle, and Myers verbally consented but wanted to limit the scope of the search to exclude a locked box located under the front passenger seat, which he claimed belonged to someone else. Myers said he did not know what was inside.

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Crawford told Myers that the vehicle would be impounded and a search warrant requested. Myers then agreed to allow a search of the entire vehicle, including the locked box. Crawford read Myers *Ferrier*[3] warnings including his rights to refuse the search, restrict the scope of the search, and to revoke consent at any time, which Myers both acknowledged and waived.

Crawford then used a key from Myers's keychain to unlock the locked box. Inside Crawford found 25.2 grams of suspected heroin in a plastic bag, 8.0 grams of suspected heroin in a rubber container, a digital narcotics scale, a large number of plastic baggies, two plastic drug baggies containing suspected methamphetamine, and a fentanyl test kit. Myers asked Crawford to retrieve his money from the dashboard of the vehicle, and Crawford found $706 in cash inside the dash compartment.

The State charged Myers with unlawful possession of a controlled substance with intent to deliver, second degree possession of stolen property, third degree possession of stolen property, and third degree driving while in suspended or revoked status. The State later moved to dismiss without prejudice the driving in suspended or revoked status charge.

Myers moved to suppress the evidence found inside the vehicle including the locked box. The trial court held a hearing considering testimony from Crawford and oral arguments from both parties. The trial court concluded that Crawford had probable cause to stop Myers for driving while his license was suspended and that the stop was not pretextual. The trial court concluded that Crawford read Myers his *Ferrier* warning and that based on the totality of the circumstances, Myers made a knowing, intelligent, and voluntary waiver of those rights and consented to the search of his vehicle. The trial court denied Myers's motion to suppress.

---

[3] *State v. Ferrier*, 136 Wn.2d 103, 960 P.2d 927 (1998).

The trial court granted Myers's motion to dismiss the second and third degree possession of stolen property charges. The jury found Myers guilty of unlawful possession of a controlled substance with intent to deliver.

Myers appeals.

ANALYSIS

I. WRITTEN FINDINGS OF FACT AND CONCLUSIONS OF LAW

As an initial matter, Myers argues that remand is necessary for entry of written findings of fact and conclusions of law as required by CrR 3.6. This rule requires the trial court to enter written findings of fact and conclusions of law. CrR 3.6(b). Typically, the failure to do so requires remand. *State v. Head*, 136 Wn.2d 619, 621-22, 964 P.2d 1187 (1998). After Myers filed his opening brief, the trial court entered written findings and conclusions. Consequently, remand is unnecessary.

Although the practice of submitting late findings of fact and conclusions of law is disfavored, findings and conclusions may be submitted and entered even while an appeal is pending if the defendant is not prejudiced by the belated entry of findings. *State v. McGary*, 37 Wn. App. 856, 861, 683 P.2d 1125 (1984). "We will not infer prejudice . . . from delay in entry of written findings of fact and conclusions of law." *Head*, 136 Wn.2d at 625. Rather, "a defendant might be able to show prejudice resulting from the lack of written findings and conclusions where there is strong indication that findings ultimately entered have been 'tailored' to meet issues raised on appeal*." Id*. at 624–25. Myers makes no such argument. Moreover, we note that the trial court's findings are consistent with its oral rulings following the CrR 3.6 hearing. Accordingly, no appellate relief on this issue is appropriate.

II. SUPPRESSION RULING

Myers argues that the trial court erred by denying his motion to suppress all evidence found during the search of the vehicle because the initial stop was pretextual and he did not voluntarily consent to the search of the vehicle. We disagree.

We review the trial court's denial of a CrR 3.6 suppression motion to determine "whether substantial evidence supports the challenged findings of fact and whether the findings support the conclusions of law." *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). Here, the parties do not dispute the facts surrounding the traffic stop and search. Whether undisputed facts constitute a violation of article I, section 7 of the Washington State Constitution is a question of law. *State v. Rankin*, 151 Wn.2d 689, 694, 92 P.3d 202 (2004). We review the trial court's conclusions of law de novo. *Garvin*, 166 Wn.2d at 249.

A.      Pretextual Stop

Myers argues that Deputy Crawford's traffic stop was pretextual. We disagree.

Under the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington State Constitution, a police officer generally cannot seize a person without a warrant. *See State v. Ladson*, 138 Wn.2d 343, 349-50, 979 P.2d 833 (1999).A lawful *Terry*[4] stop is one of the exceptions to the warrant requirement. *Id.* at 349.

"For a *Terry* stop to be permissible, the State must show that the officer had a 'reasonable suspicion' that the detained person was, or was about to be, involved in a crime." *State v. Z.U.E.*, 183 Wn.2d 610, 617, 352 P.3d 796 (2015) (quoting *State v. Acrey*, 148 Wn.2d 738, 747, 64 P.3d 594 (2003)). *Terry* stops have been extended to traffic infractions. *State v. Duncan*, 146 Wn.2d

_____

[4] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d. 889 (1968).

166, 173-74, 43 P.3d 513 (2002). For a traffic stop, an officer may detain a person for a reasonable time to identify them, check for warrants, and check the status of their driver's license, among other things. *Id.* at 174-75.

But the traffic stop must not be pretextual. *Ladson*, 138 Wn.2d at 358. A traffic stop is pretextual when an officer relies on some legal authorization as a mere pretext to justify the seizure when the true reason for the seizure is not constitutionally justified. *Id*. "[A] traffic stop is not unconstitutionally pretextual so long as investigation of either criminal activity or a traffic infraction (or multiple infractions), for which the officer has a reasonable articulable suspicion, is an actual, conscious, and independent cause of the traffic stop." *State v. Arreola*, 176 Wn.2d 284, 297, 290 P.3d 983 (2012).

The trial court's findings support its conclusion that Crawford's stop of Myers was not a pretext for a criminal investigation outside of his reasonable suspicion that Myers was driving with a suspended license. The trial court found that when Crawford ran the vehicle's license plate he discovered the vehicle was registered to Myers and that Myers's driver's license was suspended. Crawford drove alongside the vehicle and confirmed the driver matched the photograph of Myers.

Myers argues that the true reason Crawford initiated the stop was because he knew that someone associated with the vehicle had been arrested on a warrant a few weeks prior. However, the evidence does not support this speculation. Crawford did not initiate the traffic stop until after he ran the vehicle's license plate number and learned that the registered owner—Myers—had a suspended license and after confirming via photograph that Myers was driving the vehicle. Crawford testified that had the license check not shown that Myers had a suspended license, he would not have stopped Myers because he would have had no reason to.

Moreover, even if Crawford's initial decision to run the license plate was motivated by a hunch or some other illegitimate reason to support a traffic stop, that does not necessarily make the stop in this case pretextual. A mixed motive traffic stop is not unconstitutionally pretextual so long as investigation of either criminal activity or a traffic infraction, for which the officer has a reasonable articulable suspicion, is an actual, conscious, and independent cause of the traffic stop. "[D]espite other motivations or reasons for the stop, a traffic stop should not be considered pretextual so long as the officer actually and consciously makes an appropriate and independent determination that addressing the suspected traffic infraction (or multiple suspected infractions) is reasonably necessary in furtherance of traffic safety and the general welfare." *Arreola*, 176 at 297-98.

Finally, Myers points out that Crawford was off duty at the time and working for a private homeowners' association as a security guard. Myers seems to agree that an off duty officer is still performing their official duties if they conduct a traffic stop while off duty, pointing out that the fact that Crawford was off duty was "of little moment for purposes of this analysis." Br. of Appellant at 20-21. But then Myers argues that Crawford was acting outside of his duties *as a private security guard* at the time he stopped Myers. The trial court found that Crawford was in uniform and in a marked police car and that he had nonpretextual reasons for the stop. The scope of Crawford's duties as a security guard do not support pretext or otherwise undermine the trial court's conclusions.

The factual findings establish that Crawford had a reasonable, articulable suspicion that Myers was driving the vehicle with a suspended license and that making the traffic stop was

7

reasonably necessary in furtherance of traffic safety and the general welfare. Accordingly, we hold that the trial court did not err in concluding the stop was not pretextual.

B.    Consent to Search

Myers also argues that the search of his vehicle was unconstitutional because he did not voluntarily give consent. We disagree.

Warrantless searches are presumed unreasonable subject to a few exceptions that are narrowly drawn. *State v. Tyler*, 177 Wn.2d 690, 698, 302 P.3d 165 (2013). The State bears the burden of establishing an exception by clear and convincing evidence. *Garvin*, 166 Wn.2d at 250. One of the exceptions to the warrant requirement is consent to search. *State v. Thompson*, 151 Wn.2d 793, 803, 92 P.3d 228 (2004). The State must show the consent was voluntary, the person had the authority to consent, and the search did not exceed the scope of the consent. *Id*. Only the voluntariness of Myers's consent is at issue here.

Whether consent was voluntary or instead the "product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973). "[W]hen the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that [the State] demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied." *Id*. at 248. The State need not show that the defendant knew he could refuse to consent, but the defendant's knowledge is a factor in evaluating voluntariness. *Id*. at 249; *see also State v. O'Neill*, 148 Wn.2d 564, 588, 62 P.3d 489 (2003).

Other factors that may be considered include whether *Miranda* warnings were given, the defendant's level of education and intelligence, and whether police advised the defendant of their right to refuse consent. *State v. Russell*, 180 Wn.2d 860, 871-72, 330 P.3d 151 (2014). Washington courts have also considered whether the person was cooperative or initially refused consent, whether law enforcement had to repeatedly request consent, and the extent to which the defendant was restrained. *State v. Dancer*, 174 Wn. App. 666, 676, 300 P.3d 475 (2013). No single factor is dispositive. *Id*. "'Consent' granted 'only in submission to a claim of lawful authority' is not given voluntarily." *O'Neill*, 148 Wn.2d at 589 (quoting *Schneckloth*, 412 U.S. at 233)).

This case is similar to *State v. Smith*, 115 Wn.2d 775, 790, 801 P.2d 975 (1990). There, the Washington Supreme Court found that Smith's consent was voluntary. *Id*. Smith was read his *Miranda* rights and placed under arrest. *Id*. Then he asked the officers what would happen if he refused to consent to them searching the trunk of his car. *Id*. After the officers replied that they would impound his car and request a search warrant if he did not consent, Smith consented. *Id*. The court held Smith's consent was voluntary because it appeared from Smith's questions that he understood what he was doing, and he signed a written consent that included specific language explaining his right to refuse. *Id*.

The trial court concluded that Crawford read Myers his *Ferrier* warning and that based on the totality of the circumstances, Myers made a knowing, intelligent, and voluntary waiver of those rights and consented to the search of his vehicle. We hold that the trial court's findings support this conclusion.

Like in *Smith*, the trial court found that Myers was read his *Miranda* rights, which he waived. He appeared to understand that he could limit the search when he initially consented to a

search of the vehicle excluding the lockbox and trunk. As in *Smith*, Crawford told Myers that the vehicle would be impounded and a search warrant requested. Myers contends that providing that information was coercive and precludes a finding his later consent was voluntary. We disagree. The trial court found that Crawford provided Myers *Ferrier* warnings, which Myers expressly waived. Subsequent to that warning, Myers directed Crawford to the key for the lockbox that was on his keychain. From these findings, the trial court could legitimately conclude that Myers knew what he was doing, weighed the options of consenting to the full search against having the vehicle impounded and a search warrant requested, acknowledged his right to refuse or limit his consent to search, and nonetheless consented. We agree with the trial court's conclusion that under the totality of the circumstances described in the trial court's findings, Myers's consent was voluntary.[5]

We affirm.

---

[5] We note that a *Ferrier* warning was not required here because this case involved the search of a car, not the search of a home, and there is nothing in the record to indicate Meyers lived in his car. *State v. Ferrier*, 136 Wn.2d 103, 960 P.2d 927 (1998); *see also State v. Witherrite*, 184 Wn. App. 859, 864, 339 P.3d 992 (2014).

No. 56451-3-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Glasgow, CJ

We concur:

_____
Lee, J.

_____
Veljacic, J.