[No. 2051–3. Division Three. June 7, 1977.]

THE STATE OF WASHINGTON, *Respondent,* v. SHAWN KEVIN RILEY, *Appellant.*

Richard L. Cease, Public Defender, and Gerald A. Horne, Assistant, for appellant.

Donald C. Brockett, Prosecuting Attorney, and Roger Clement, Deputy, for respondent.

GREEN, J.—Defendant appeals from a conviction of second-degree burglary. His sole assignment of error to the trial court's failure to suppress his confession raises one issue: Whether the conduct of the police was coercive thereby overcoming the voluntariness of the confession.

The testimony at the CrR 3.5 hearing and upon trial reveals that on January 12, 1976, Detective Neumiller and Special Agent Thomas went to defendant's home to arrest him for burglary of railroad property. During the previous week, federal agents questioned the defendant regarding the burglary. Detective Neumiller advised the defendant of his rights, informed him of his purpose and the evidence against him. The defendant, who was 17 1/2 years of age, denied any involvement in the burglary. Detective Neumiller suggested that defendant should cooperate and clear things up. Both Thomas and Neumiller testified that Detective Neumiller then told defendant to put on his shoes and coat as he was being arrested, at which time the defendant asked what would happen if he told them about the burglary. Detective Neumiller stated that he would make a juvenile referral, without physical arrest, and that defendant could stay home at that point but later would

have to appear in court. He also informed the defendant of the possibility of federal charges and incarceration.

The defendant testified:

Q. And, was there anything in particular that made you confess? Any statements by Detective Neumiller, or Special Agent Thomas?

A. It was after when he told me to get on my shoes and coat, and he said I was going to be booked, and I asked "at Juvenile", and he said "no."

Q. He said "no." Did he elaborate more on that?

A. Well, from what he said, I thought that he was going to book me in jail.

Q. You thought he was going to do that. Did he say anything though that would indicate that he was going to book you into jail?

A. I'm pretty sure.

Q. Did you put on your shoes and coat then?

A. No.

Q. What did you do?

A. I was still sitting on the coach [sic] .

Q. And, did you confess at that point?

A. No. I asked him what would happen if I did confess.

Q. And, what did he say?

A. He said that he couldn't say exactly what would happen, but he said that I might be paroled or something, and said that he would make a Juvenile referral.

Q. He said he would make a Juvenile referral. And, just said "might", he didn't say positively what would happen to you, right?

A. Ah–hum.

Q. And, did you ever go with him that day then?

A. No.

Q. Did he take you out of the house?

A. No.

Q. And, what exactly did you tell Detective Neumiller about your involvement in this burglary?

A. Well, I told him that I did it; I told him Ken Utter was in on it, and I told him that we sold the T.V. to some guy on the street.

Q. And, did you identify this other party?

A. Who?

Q. This guy you sold it to?

A. No.

During all of these conversations, which lasted about 20 minutes, defendant's mother was present.

The trial court at the CrR 3.5 hearing found that the confession was voluntary and it was admitted at trial. The jury was instructed to consider the confession only if they found the admissions were voluntary and not caused by duress, fear, threats, or promises. The jury returned a verdict of guilty.

Defendant contends that the confession should have been suppressed because it was induced by threats of arrest, federal charges, and imprisonment. We disagree and affirm.

■ To be admissible, a confession must be voluntary; and the test is whether the officer's behavior overcame the defendant's will to resist and brought about an admission that was not freely self–determined. The probable truth or falsity of the confession is not to be considered. Whether a confession is free and voluntary is not determined by whether the officer's conduct is shocking or the confession is cruelly extorted, but whether it was extracted by any sort of threats, violence, or direct or implied promises, however slight. A confession that is the product of coercion, physical or psychological, is involuntary and not admissible. *Rogers v. Richmond,* 365 U.S. 534, 5 L. Ed. 2d 760, 81 S. Ct. 735 (1961). Further, we recognize that the factors to consider in determining the voluntariness of a confession take on added weight with respect to a young or ignorant defendant; and the court must evaluate the probable effect on him, given his particular strength and weaknesses. *See Gallegos v. Colorado,* 370 U.S. 49, 8 L. Ed. 2d 325, 82 S. Ct. 1209, 87 A.L.R.2d 614 (1962); *Haley v. Ohio,* 332 U.S. 596, 92 L. Ed. 224, 68 S. Ct. 302 (1948).

Here, we agree with the trial court that the confession was admissible because it was voluntary. Detective Neumiller went to defendant's home to arrest him for burglary, and talked to defendant for approximately 20 minutes while his mother was present. Prior to questioning, he was advised of his rights. Detective Neumiller (after telling defendant to prepare to be taken into custody) answered

defendant's questions as to the consequences of a confession, and informed him of the juvenile referral procedure. Defendant had been to juvenile before but was unfamiliar with this procedure, a nonphysical arrest. Defendant's confession was apparently motivated by *his* own desire to avoid being physically arrested.[1] Detective Neumiller made no direct or implied promises or threats as a reward for confessing. The cases relied on by the defendant are distinguishable and not controlling.[2] There is no error.

Affirmed.

MUNSON, C.J., and MCINTURFF, J., concur.

Reconsideration denied June 30, 1977.

Review denied by Supreme Court January 23, 1978.

---

[1]Similarly, in *Irvin v. Dowd,* 271 F.2d 552 (7th Cir. 1959), defendant, after arrest, requested an interview with the prosecuting attorney and confessed, motivated by his own desire to avoid being tried in another state where he was wanted on other charges. The confession was held voluntary and admissible.

[2]*Haynes v. Washington,* 373 U.S. 503, 10 L. Ed. 2d 513, 83 S. Ct. 1336 (1963) (confession involuntary where defendant held incommunicado for 16 hours and not allowed to phone wife or attorney until he "cooperated" and signed written confession); *Lynumn v. Illinois,* 372 U.S. 528, 9 L. Ed. 2d 922, 83 S. Ct. 917 (1963) (confession inadmissible where police told defendant, who had no previous criminal contact with police, that her children would be placed in foster homes and her welfare taken away if she did not cooperate, but if confessed, the judge would go easy on her); *Malloy v. Hogan,* 378 U.S. 1, 12 L. Ed. 2d 653, 84 S. Ct. 1489 (1964) (unconstitutional to imprison defendant until he would testify after he invoked Fifth Amendment right to silence in state gambling investigation held subsequent to his guilty plea to gambling).