# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>DANIEL SCHROEDER SR.,<br><br>Appellant. | No. 52008-7-II<br><br>UNPUBLISHED OPINION |

GLASGOW, J. — Police approached Daniel Schroeder Sr. after they saw him engage in a suspected drug transaction. An officer told Schroeder, who uses a wheelchair, that they would not immediately arrest him and would instead refer charges if he was honest with them. Schroeder handed the officer a small leather case and agreed the officer could open it. The case contained methamphetamine. Schroeder was later convicted of possession of methamphetamine.

Schroeder argues that he did not voluntarily consent to any search, and so the trial court should have granted his motion to suppress the methamphetamine found in the case. He also challenges the imposition of certain legal financial obligations.

We affirm Schroeder's conviction and remand for the trial court to strike the challenged legal financial obligations.

### FACTS

In response to citizen complaints of drug activity near a church in Centralia, police officers set up surveillance of the area. Some of those complaints described a man who was missing a leg and using a wheelchair. The police suspected the man was Schroeder because they had contacted him in the area before, found drugs, and given him a warning. During their surveillance, officers

observed an "exchange" between Schroeder and Lonny Clevenger next to a nearby grocery store, but they could not see what items were exchanged. Verbatim Report of Proceedings (VRP) (Apr. 4, 2018) at 6, 14.

Detective Adam Haggerty approached Schroeder and informed him that the police had witnessed the exchange and needed to talk to him about it. Schroeder claimed that he had merely given money to Clevenger to buy a beer, which was confirmed soon after when Clevenger exited the store with a beer. While other officers began talking to Clevenger, Haggerty and Schroeder chatted about their experiences serving in the military. During this time Schroeder did not try to leave.

The other officers found methamphetamine on Clevenger. Haggerty testified that at this point Schroeder was no longer free to leave while the police continued investigating, though he did not tell Schroeder this. When their conversation turned back to whether drugs had changed hands, Schroeder offered for Haggerty to "search me then." VRP (Apr. 4, 2018) at 25. Haggerty felt Schroeder's pockets and found nothing. Haggerty told Schroeder that they believed he had been dealing drugs and that if he was honest, Haggerty would "refer charges" rather than immediately arresting Schroeder and bringing him to jail. VRP (Apr. 4, 2018) at 16. Haggerty told Schroeder: "It's in my best interests that if you do that, I won't book—bring you to jail, won't book you into custody; I can refer the charges." VRP (Apr. 4, 2018) at 10. Haggerty testified that he may have referenced Schroeder's wheelchair when explaining that it was in Haggerty's best interest not to arrest Schroeder at that moment "and have to deal with everything going on, medical issues." VRP (Apr. 4, 2018) at 24-25.

Schroeder responded by pulling a small leather case out of his backpack and handing it to Haggerty. Haggerty asked Schroeder for permission to open it, and Schroeder said yes. Inside, Haggerty found a "smoking device" and methamphetamine. VRP (Apr. 4, 2018) at 12. After the other officers arrested several more people in the area, Haggerty informed Schroeder that he would refer his charges. He did not arrest Schroeder at that time.

During their conversation Haggerty did not read Schroeder his *Miranda*[1] rights or inform him of his right not to consent to a search. Haggerty also acknowledged that at the time, he did not have any legal basis to arrest Schroeder.

The State charged Schroeder with one count of possession of methamphetamine. Schroeder moved to suppress all evidence that resulted from "the search of . . . Schroeder and his belongings" on the grounds that his consent to the warrantless search was not voluntary. Clerk's Papers (CP) at 7.

At the CrR 3.6 hearing, Haggerty testified consistent with the facts described above. Schroeder testified that he was going to cross the road when an officer pushed him in his wheelchair back to the store and told him not to move. Schroeder said that he felt "confined" and unable to leave, but also said that he did not want to leave. VRP (Apr. 4, 2017) at 24. Schroeder testified that he was fearful that Haggerty would take him downtown and that he would not have given Haggerty the case containing the methamphetamine had Haggerty not said he could avoid arrest by doing so. Schroeder acknowledged that he was more familiar than the average person with law enforcement procedures and that he was aware of the significance of consenting to a search.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

The trial court denied the motion to suppress and entered findings of fact consistent with Haggerty's testimony. In its conclusions of law, the court determined that Haggerty's offer not to book Schroeder in exchange for Schroeder being honest with him did not violate Schroeder's constitutional rights under *State v. Riley*, 17 Wn. App. 732, 565 P.2d 105 (1977) and *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973). The court concluded that, under the totality of the circumstances, Schroeder voluntarily consented to Haggerty's search of the case.

Schroeder waived his right to a jury trial and proceeded to a bench trial on stipulated facts. The trial court found Schroeder guilty as charged and sentenced him to six months and one day. The court also ordered Schroeder to pay a $200 criminal filing fee and a $100 DNA collection fee.

Schroeder appeals.

## ANALYSIS

### I. SCHROEDER'S MOTION TO SUPPRESS

Schroeder argues that the trial court erred in denying his motion to suppress because his consent to allow the police to search his backpack was not freely and voluntarily given. We disagree.

A.     Standard of Review and Protections Against Unreasonable Searches and Seizures

When reviewing the denial of a suppression motion, we determine whether substantial evidence supports the challenged findings of fact and whether the findings support the trial court's conclusions of law. *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). Evidence is substantial when it is enough to persuade a fair-minded person of the truth of the stated premise. *Id.* We review the trial court's conclusions of law de novo. *Id.* Schroeder has not assigned error

to the trial court's findings of fact, so we treat them as verities on appeal. *State v. Bustamante-Davila*, 138 Wn.2d 964, 976, 983 P.2d 590 (1999).

As a general rule, warrantless searches and seizures are per se unreasonable under the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution unless the search falls within one of the "'few jealously and carefully drawn exceptions to the warrant requirement.'" *Garvin*, 166 Wn.2d at 249 (quoting *State v. Duncan*, 146 Wn.2d 166, 171-72, 43 P.3d 513 (2002)) (internal quotations omitted). The State bears the burden of establishing an exception by clear and convincing evidence. *Id.* at 250.

One of the exceptions to the warrant requirement is consent to search. *State v. Thompson*, 151 Wn.2d 793, 803, 92 P.3d 228 (2004). The State must show that consent was lawfully given by satisfying three requirements: (1) the consent was voluntary, (2) the person had the authority to consent, and (3) the search did not exceed the scope of the consent. *Id.* Only the voluntariness of Schroeder's consent is at issue here.

B.    Voluntariness of Schroeder's Consent to Search

Whether consent was voluntary or instead the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of the circumstances. *Schneckloth*, 412 U.S. at 227. "[W]hen the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that [the State] demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied." *Id.* at 248. The State need not show that the defendant knew he could refuse to consent, but the defendant's knowledge is a factor in evaluating voluntariness. *Id.* at 248-49; *see also State v. O'Neill*, 148 Wn.2d 564, 588, 62 P.3d 489 (2003).

Other factors that may be considered include whether *Miranda* warnings were given, the defendant's level of education and intelligence, and whether police advised the defendant of their right to refuse consent. *State v. Russell*, 180 Wn.2d 860, 871-72, 330 P.3d 151 (2014). Washington courts have also considered factors such as whether the person was cooperative or initially refused consent, whether law enforcement had to repeatedly request consent, and the extent to which the defendant was restrained. *State v. Dancer*, 174 Wn. App. 666, 676, 300 P.3d 475 (2013). No single factor is dispositive. *Id*.

In *O'Neill*, our Supreme Court noted that "'consent' granted '*only* in submission to a claim of lawful authority' is not given voluntarily." 148 Wn.2d at 589 (quoting *Schneckloth*, 412 U.S. at 233). In that case, O'Neill refused to consent to a search. *Id*. at 573. The officer claimed he could arrest O'Neill and then search him without a warrant, regardless of whether O'Neill gave consent, and the officer repeated the statement several times before O'Neill finally consented. *Id*. at 590-91. The court found the officer's repeated statements to be coercive and upheld the trial court's ruling that O'Neill's eventual consent was involuntary. *Id*. at 591.

In contrast, in *State v. Smith*, the Supreme Court found that Smith's consent was voluntary. 115 Wn.2d 775, 790, 801 P.2d 975 (1990). The defendant was read his *Miranda* rights and placed under arrest. *Id*. Then he asked the officers what would happen if he refused to consent to them searching the trunk of his car. *Id*. After the officers replied that they would impound his car and request a search warrant if he did not consent, Smith consented. *Id*. The court held Smith's consent

was voluntary because it appeared from Smith's questions that he understood what he was doing, and he signed a written consent that included specific language explaining his right to refuse. *Id.*[2]

Considering the totality of the circumstances as contemplated under the case law, we conclude that Schroeder's consent was voluntary.

Haggerty testified that Schroeder was not free to leave while the police continued their investigation, but since Schroeder had not been arrested, advising him of his *Miranda* rights and his right to refuse consent were not a prerequisite to obtaining voluntary consent under *Schneckloth* and *O'Neill*. *O'Neill*, 148 Wn.2d at 588. Although Schroeder contends that Haggerty used Schroeder's disability to induce him to consent, the record suggests that the officer's intent was not only to imply that Schroeder would have a harder time in jail because of his disability, but also to explain that it would be in Haggerty's own interests to avoid the additional logistical concerns of arresting a person with Schroeder's medical issues. Furthermore, Schroeder initially offered for Haggerty to search his person, and Schroeder was cooperative throughout the encounter. There was no testimony on Schroeder's education level, but Schroeder admitted that he had been involved in other incidents with police and so was more familiar than a typical person with "the procedures that are involved in contact with law enforcement." VRP (Apr. 4, 2017) at 27.

Haggerty, rather than Schroeder, initiated the discussion about the consequences for refusing consent. However, Haggerty did not repeatedly demand consent, nor did he repeatedly state that he could arrest and search Schroeder absent his consent. Haggerty once asked Schroeder

---

[2] The trial court in this case analogized to *State v. Riley*, 17 Wn. App. 732, 565 P.2d 105 (1977), which is a confession case, not a consent to search case. In *Riley*, the defendant confessed in order to avoid an immediate arrest. *Id.* at 736. Because the officer had made no direct or implied promises or threats as a reward for confessing, the court held the confession was made voluntarily. *Id.*

7

to be honest with him and told Schroeder that in exchange he could avoid immediate arrest. Schroeder immediately and calmly reached into his backpack and handed Haggerty the case containing the drugs.

We hold that, under the totality of the circumstances, Schroeder's consent was voluntary. "As our Supreme Court stated in upholding another consensual search, 'Bowing to events, even if one is not happy with them, is not the same thing as being coerced.'" *State v. Cherry*, 191 Wn. App. 456, 473, 362 P.3d 313 (2015) (quoting *State v. Lyons*, 76 Wn.2d 343, 346, 458 P.2d 30 (1969)). The trial court did not err in denying Schroeder's motion to suppress.

## II. LEGAL FINANCIAL OBLIGATIONS

Schroeder argues the criminal filing fee and DNA collection fee must be stricken. The State concedes that these fees must be stricken. We accept the State's concession and remand to strike the criminal filing fee and the DNA collection fee.

In 2018, the legislature amended former RCW 36.18.020(h) to prohibit the imposition of the criminal filing fee if a defendant is indigent as defined in RCW 10.101.010(3) (a) through (c). LAWS OF 2018, ch. 269, § 17. The legislature also amended RCW 43.43.7541 in 2018, authorizing the imposition of a DNA collection fee "unless the state has previously collected the . . . offender's DNA as a result of a prior conviction." LAWS OF 2018, ch. 269, § 18. Our Supreme Court has held that the 2018 amendments to the legal financial obligations statutes apply to cases pending on direct review and not final when the amendments were enacted. *State v. Ramirez*, 191 Wn.2d 732, 747, 426 P.3d 714 (2018).

The 2018 amendments apply here because this case was not final when the amendments took effect. *Id*. The State concedes that Schroeder is indigent under RCW 10.101.010(3)(a)

through (c). The State also concedes that its records show that Schroeder's DNA was previously collected and is on file with the Washington State Patrol Crime Lab. The criminal filing fee and DNA collection fee should therefore be stricken from Schroeder's judgment and sentence.

CONCLUSION

We affirm Schroeder's conviction and remand for the trial court to strike the criminal filing fee and DNA collection fee.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, J.

We concur:

Maxa, C.J.

Sutton, J.